900 So.2d 901 (2005)
Agnes MOTTON
v.
LOCKHEED MARTIN CORPORATION, Jim Gibson, and Danny Bryant.
No. 2003-CA-0962.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 2005.
Opinion Granting Rehearing April 6, 2005.
*906 Clement P. Donelon, Metairie, LA, for Plaintiff/Appellee.
Barbara Ryniker Evans, Anne E. Bendernagel, Evans & Associates, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE).

ON APPLICATION FOR REHEARING
PER CURIAM.
This appeal arises from plaintiff, Agnes Motton's claim that her employer, Lockheed Martin, discriminated against her on the basis of sex and race. Although the jury found that Lockheed Martin discriminated against Agnes Motton on the basis of sex, it did not find that Lockheed Martin discriminated against her on the basis of race. The trial court denied Agnes Motton's request for re-instatement and front pay. It is from the jury's findings that both Lockheed Martin and Agnes Motton appeal. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In 1979, Agnes Motton ("Ms. Motton"), an African-American female, was hired by Lockheed Martin ("Lockheed") for the position of Mechanic Installation. During her employment with the Production department,[1] she received two promotions. In 1995, Lockheed announced that four (4) Systems Control Mechanic A ("Control Mechanic") positions were available in its Facilities department. The positions were available to both current Lockheed employees and applicants outside of the company. A total of twenty-two (22) people applied for the four (4) available positions; of the 22 applicants, only two were female.
Danny Bryant ("Mr. Bryant") and Jim Gibson ("Mr. Gibson"), two Control Mechanic supervisors, evaluated the applicants' resumes and performed a technical interview. After reviewing all of the applicants, *907 four applicants were selected for the position. The four applicants selected were Leo Williams, Dennis Caddell, Willie Henderson, and Eugene Holmes; all of the successful applicants were male, two of which, Leo Williams and Willie Henderson, were African-American.
The Control Mechanic position required that each applicant have experience and familiarity in several areas: (1) pneumatics; (2) mechanical; (3) electrical; (4) electronic; (5) hydraulics; (6) programmable logic controllers ("PLCs"); (7) computer hardware; (8) environmental; and five years of related experience in Control Mechanics. The experience required in the areas of pneumatic, mechanical, and environmental systems needed to relate specifically to temperature controllers, heating, ventilating, air conditioning systems and fan houses, boilers, chiller controls, or compressor controls.
The experience required in the area of hydraulics needed to relate to experience in machine tools. The areas of electrical and electronic experience required that the experience related specifically to systems controllers akin to automatic welding machines. Control Mechanic's were also required to have knowledge of PLCs and troubleshooting and repairing computers, peripherals and network systems. In addition to the related experience requirement, the educational requirement was a high school diploma, which each successful applicant, as well as Ms. Motton possessed.
On a disposition action form completed by Mr. Bryant and Mr. Gibson evaluating Ms. Motton, they reported the following:
Employee has associates degree in electronics, has no computer hardware, PLC, or pneumatics experience. Unable to answer most technical questions that were asked. Would require extensive training. Does not meet requirements for SCMA at this time.
Ms. Motton received a memorandum from Lockheed indicating that another candidate was selected for the position. After receiving the memorandum indicating Ms. Motton failed to receive the promotion, she scheduled a meeting with the Human Resources Director, Cheryl Alexander ("Ms. Alexander"). Ms. Motton expressed her disappointment to Ms. Alexander and Paul Mazant ("Mr. Mazant"), the union steward.[2] Subsequently, Ms. Motton filed suit in state court under Louisiana's employment discrimination statutes, alleging Lockheed intentionally discriminated against her in denying her a promotion to the Control Mechanic's position based upon her sex and race. Ms. Motton also filed a defamation suit against her interviewers, Mr. Gibson and Mr. Bryant (collectively referred to as "Supervisors") for falsely and maliciously reporting that she did not correctly answer the technical questions they asked during her interview.
Lockheed removed the case to federal court and filed a Motion for Summary Judgment. The federal court denied defendant's Motion for Summary Judgment and remanded the matter to state court. After remand, Lockheed filed a second Motion for Summary Judgment regarding Ms. Motton's discrimination claim and Mr. Gibson and Mr. Bryant filed a Motion for Summary Judgment concerning Ms. Motton's defamation claims.
The trial court granted Mr. Gibson and Mr. Bryant's Motion for Summary Judgment as to the defamation claim which was affirmed in Motton v. Lockheed Martin, XXXX-XXXX (La.App. 4 Cir. 12/01/97), 703 So.2d 202 ("Motton I"). The trial court denied Lockheed's Motion for Summary Judgment regarding Ms. Motton's discrimination *908 claim. Lockheed again attempted to remove the case to federal court, but the matter was remanded to state court. Lockheed filed a third and final Motion for Summary Judgment, which was denied. The defendant unsuccessfully sought supervisory writs.
After a six-day trial and the trial court's denial of defendant's Motion for Directed Verdict, the jury issued a judgment in Ms. Motton's favor on her sex discrimination claim, but found Ms. Motton had not been denied a promotion based on her race. The jury unanimously voted to award the plaintiff $130,000 in monetary damages, including $100,000 in general damages. Lockheed filed two post trial motions on the issues of liability and damages, a Motion for Judgment Notwithstanding the Verdict on Liability or New Trial; Motion for Judgment Notwithstanding the Verdict and Motion for A New Trial on Quantum, and Alternatively for Remittur. The trial court denied both motions.
Ms. Motton filed a Memorandum requesting re-instatement and front pay. The trial court also denied Ms. Motton's request for front pay and instatement to the Control Mechanic position. Ms. Motton's counsel filed a motion to have the Court assess attorney's fees and costs. The trial court awarded Ms. Motton's counsel a total of $115,198.75 in attorney's fees, including $113,580.00 for lead counsel, Clement P. Donelon, and $1,618.75 for Dale Williams. The trial court also awarded Ms. Motton costs in the amount of $6,783.96. It is from this judgment that Lockheed timely lodged this appeal asserting the following assignments of error:
1. The sex discrimination jury verdict must be reversed as it was manifestly erroneous;
2. The trial court's denial of defendant's motions for directed verdict and JNOV was manifestly erroneous;
3. The sex discrimination jury verdict was tainted by admission of evidence warranting a de novo determination of no liability;
4. The award of compensatory damages for sex discrimination must be reversed as the jury abused its much discretion;
5. The trial court's attorney fee award was an abuse of the trial court's discretion as Ms. Motton only prevailed on half her claims, some work was duplicative and the hourly rate exceeded community standards.
Ms. Motton has filed a cross-appeal asserting the following:
1. The trial court erred by denying front pay or a promotion;
2. The trial court erred by reducing her attorneys' hours, and its denial of enhancement.

Standard of Review
The standard of review for factual findings in this case is that of manifest error. Initially, we must determine if the record supports a reasonable factual basis for the jury's findings. Then, we must determine whether the record establishes that the jury's finding is not clearly wrong. Beaumont v. Exxon Corp., 2002-2322, p. 6 (La. App. 4 Cir. 3/10/04), 868 So.2d 976, 980, writ denied, XXXX-XXXX (La.9/3/04), 882 So.2d 609. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989), quoting Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).

FIRST ASSIGNMENT OF ERROR
Lockheed asserts Ms. Motton failed to establish that she was not promoted to the Control Mechanic position on the basis of *909 sex. Specifically, Lockheed argues Ms. Motton lacked the necessary qualifications for the position, she was not "clearly better qualified" than the four successful candidates, and sex was not the determinative factor in Ms. Motton not securing a Control Mechanic position.
The State of Louisiana's anti-discrimination in employment legislation is recorded in Title 23 of the Louisiana Revised Statutes. Pursuant to La. R.S. 23:332(A)[3], it is unlawful for an employer to intentionally discriminate against an individual with respect to his compensation or his terms, conditions, or privileges of employment, because of the individual's sex.[4] Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws. Bustamento v. Tucker, 607 So.2d 532, 538 n. 6 (La.1992); King v. Phelps Dunbar, L.L.P., 98-1805 (La.6/4/99), 743 So.2d 181, 187.
Recognizing that "`the question facing triers of fact in discrimination cases is both sensitive and difficult," and that "[t]here will seldom be `eyewitness' testimony to the employer's mental processes'", the Courts have employed the McDonnell Douglas framework that is based principally on circumstantial evidence. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Therefore, Motton's sex-discrimination claim is subject to the burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 678 (1973).
First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 678 (1973). Second, if the plaintiff succeeds in proving the prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id.

Prima Facie Case Established by Plaintiff
In an employment discrimination case, the plaintiff bears the initial burden of first establishing a prima facie case of unlawful discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To meet this burden, Ms. Motton must show: (1) she is a member of a protected class, (2) she was qualified to do the job, (3) she suffered an adverse employment action, and (4) others *910 outside the protected group were treated more favorably than she. "The plaintiff's burden of establishing a prima facie case is not onerous. To establish a prima facie case, a plaintiff need only make a very minimal showing." Id.
The plaintiff, Ms. Motton, possessed a high school diploma and a certificate in Electric Engineering Technology from RETS Electrical Engineering and Technology Training Center ("RETS"). Ms. Motton testified that after her tenure at RETS, the program was accredited and she was awarded an associates degree; however, at the trial on the merits, only the RETS Certificate was produced. In 1979, Martin Marietta, currently called Lockheed, recruited and employed Ms. Motton in Mechanics Installation. During her tenure at Lockheed, Ms. Motton was promoted to different positions, including Mechanic Installation and Test, and Mechanic Systems Test ("MST") wherein she remained for five years, working in the Production Department constructing the external tank of the space shuttle for the National Aeronautics and Space Administration ("NASA"). In addition to her promotions, Ms. Motton received several honors while employed at Lockheed, including Employee of the Year.
Ms. Motton worked extensively in the fields of pneumatics, computer hardware, and electronics during her employment with Lockheed. As an employee of the MST department at Lockheed she had pneumatic experience evidenced by installing pneumatic systems and pneumatic components to the external tank of the space shuttle for NASA. Ms. Motton also had experience in the mechanical, electrical, and hydraulic areas because she performed the assembly, checkout, modification, and repair of test equipment, control consoles, and read-out instrumentation that are mechanical, electrical, and hydraulic in design and construction. Ms. Motton worked extensively with the Hughes 3000 circuit analyzer, a large mainframe computer; she possessed PLC experience in a training class and troubleshooting PLC automation from Allen Bradley [sic].
Pursuant to the McDonnell Douglas analysis, Ms. Motton has established that as a female, she is a member of a protected class. The record establishes that she has shown that she has suffered an adverse employment action in that she failed to secure a promotion to the Control Mechanic position. The four successful applicants to the Control Mechanic position were all male; therefore, Ms. Motton established that others outside the protected class were treated more favorably than she.
In contrast, Lockheed asserts Ms. Motton failed to establish she was a victim of sex discrimination because she lacked the requisite qualifications for the Control Mechanic position. Ms. Alexander testified the Control Mechanic position required an individual to have at least five years experience in similarly related facilities type work; including training and experience in pneumatics, programmable logic controllers (PLC), computer hardware, hydraulics, mechanical, and electronics. On the disposition action form, Mr. Gibson and Mr. Bryant reported that Ms. Motton was not qualified for the Control Mechanic position at that time because she lacked experience in the required areas of computer hardware, PLC, and pneumatics. The Supervisors also reported she failed to answer most technical questions asked of her. Lockheed maintains Ms. Motton's related experience in the Productions department is not similar to the work Control Mechanics perform in the Facilities department.
*911 According to Ms. Motton's resume', she had fourteen (14) years of related experience in the Production department at Lockheed. The plaintiff completed high school and received a certificate from RETS technical school in electrical engineering technology. The Control Mechanic position required experience in pneumatics, which Ms. Motton possessed by installing pneumatic systems and components to the external tank of the space shuttle for NASA. The Control Mechanic position required experience in mechanical, electrical and hydraulics. Ms. Motton possessed the requisite experience in all three areas because she performed the assembly, checkout, modification, and repair of test equipment, control consoles, and read-out instrumentation that are mechanical, electrical, and hydraulic in design and construction. The Control Mechanic position required experience in computer hardware. Both Ms. Motton and Mr. Mazant, testified she acquired extensive experience in troubleshooting and repairing the large mainframe computer called the Circuit Analyzer. The Control Mechanic's position also required experience in PLCs, which Ms. Motton also possessed via a training class and troubleshooting PLC automation from Allen Bradley [sic]. Although Mr. Gibson did not recommend Ms. Motton for the Control Mechanic position, he testified that based on her records and education they [Mr. Gibson and Mr. Bryant] thought she had "adequate training and education to do the job" as a Control Mechanic. Both Ms. Motton and Mr. Mazant testified that Ms. Alexander stated, Ms. Motton was qualified, but not selected. However, Ms. Alexander testified that she stated Ms. Motton was not as qualified as the successful candidates.
Accordingly, based on Ms. Motton's education, past experience in all of the requisite areas, and the supported testimony of Mr. Gibson, Ms. Alexander and Mr. Mazant that Ms. Motton was qualified for the position; it is reasonable to believe the jury concluded Agnes Motton was qualified for the Control Mechanic position. Ms. Motton, therefore, established her prima facie case.

Defendant's Legitimate, Nondiscriminatory Reasons for Employment Action
Once the plaintiff establishes a prima facie case, it raises an inference of unlawful discrimination and the burden then shifts to the defendant-employer to proffer a legitimate, nondiscriminatory reason for the challenged employment action. Burdine, 450 U.S. at 254, 101 S.Ct. 1089. The burden that shifts to the defendant is, therefore, to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred for legitimate, nondiscriminatory reasons. Id. at 254, 101 S.Ct. 1089. The defendant need not persuade the court that it was actually motivated by the proffered reason. Id. at 254, 101 S.Ct. 1089, citing Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978). The proffered reason is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. Burdine, 450 U.S. at 254, 101 S.Ct. 1089. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.
In its attempt to rebut the presumption of discrimination established by Ms. Motton's prima facie case, Lockheed asserts that the four successful applicants were better qualified than Ms. Motton. One of the four successful applicants was Leo Williams ("Mr. Williams"). Mr. Williams possessed a high school diploma, an electrical trade certification from Delgado, a certification for fiber optics with the City *912 of New Orleans, and a journeyman license. Prior to employment at Lockheed, Mr. Williams was employed by Brooks Grocery Store; performed painting work for Jeff Greer; electrical work for Coals Construction Company, and the IBW Electricians Local Union. When he applied for the Control Mechanic position, Lockheed had employed Mr. Williams for 12 years in electrical maintenance and electrical construction in the Facilities department.
Mr. Williams had experience in PLCs, mechanical, electrical, and pneumatics as the lead electrician in the spray booth where he installed PLCs, motor controls, lighting, and pneumatics. He also had mechanical, hydraulic, and environmental system experience as he installed fire alarms, access video camera, and HVAC systems. His computer hardware experience encompassed installing computer hardware and video computer systems. Similar to Ms. Motton, Mr. Williams had performed checkout and functional performance tests on PLCs, HVAC, and fire alarm systems thereby having experience in PLCs and mechanical systems. Lockheed named Mr. Williams Employee of the Year in 1994.
The second successful applicant of the four selected was Eugene Holmes ("Mr. Holmes"). Mr. Holmes was an electronic control technician with over 11 years of experience. He received an electronics certificate from the Institute of Electronics Technology and earned college credit from Delgado Community College and the University of New Orleans pursuing an electrical engineering degree. Mr. Holmes was employed by the Louisiana State University Medical Center for over 6 years as a lead technician.
Mr. Holmes had computer and hydraulics experience in repairing computer hardware to the component level utilizing Control Mechanic's test equipment and tools. He had PLC, electrical, mechanical and environmental system experience by installing, maintaining, and troubleshooting phone and communication systems, energy management systems, MCC power systems [air conditions, ventilation, water flow electricity and all associated controls and instruments], ADP computerized parking control systems, PLCs, video camera and security systems, fire alarms and paging systems.
The third successful applicant was Dennis Caddell ("Mr. Caddell") a high school graduate who was employed by IBM for twenty-six (26) years and served four (4) years in the United States Navy. The majority of his experience was in the computer area where he possessed expertise in maintaining and troubleshooting computer hardware, software and peripherals at IBM. He also worked on process control computers in refineries and manufacturing facilities similar to Lockheed. Mr. Caddell possessed extensive experience in computers and hydraulics repairing IBM computers, CPUs, the AS400 Computer and peripherals like printers, tape and desk drives which were similar to the weld tools used by Control Mechanics. He had electrical, electronic, mechanical, and radar computer training from Navy schools and attended seventy-five (75) IBM factory schools on fifty (50) to one hundred (100) different types of computer hardware. He received numerous honors during his employment at IBM.
The fourth successful applicant was Willie Henderson ("Mr. Henderson") Mr. Henderson possessed a high school diploma. Professionally, he had 6 years of training and experience in the Navy's Advanced Electronics Unit on a fast attack submarine. He had pneumatic, electronic, hydraulic and computer experience in the form of training on complex systems, including sophisticated radar, pneumatics, *913 hydraulic, navigational, global positioning; closed circuit television, troubleshooting computer hardware and supervising electronic technicians. He had numerous military honors including the National Defense Medal.
The employee's prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action. To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. Burdine, 450 U.S. at 257, 101 S.Ct. at 1096. The record establishes that Lockheed articulated lawful reasons for not hiring Ms. Motton, satisfying the second prong of the McDonnell Douglas framework. If the defendant-employer meets their burden, the plaintiff must then produce evidence to demonstrate that the employer's presumably nondiscriminatory reason for not hiring her was a pretext for intentional discrimination. Id.

Pretext for Intentional Discrimination Established by Plaintiff
A plaintiff may raise a fact question about pretext by presenting evidence that she is "clearly better qualified" than the employee selected for the position in dispute. Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 356-57 (5th Cir. 2001). To accomplish this, the plaintiff must show that "disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face." E.E.O.C. v. Louisiana Office of Community Services, 47 F.3d 1438, 1445. A plaintiff may also establish pretext by presenting evidence that the employer's proffered explanation is false or unworthy of credence, because "it is not the real reason for the adverse employment action." If, however, a plaintiff relies on comparative qualifications alone, she must present evidence that she is "clearly better qualified" than those individuals who were hired. Rutherford v. Harris County, Tex., 197 F.3d 173, 182 n. 9 (5th Cir.1999). See, E.E.O.C. v. Manville Sales Corp., 27 F.3d 1089, 1096 n. 5 (5th Cir.1994).
Lockheed argues Ms. Motton was not "clearly better qualified" than the four successful candidates. Ms. Motton asserts she is not required to establish she was "clearly better qualified", but avers she did establish she was "clearly better qualified". Each applicant was required to be knowledgeable in the following areas: mechanical, hydraulic, PLCs, pneumatics, electronics, and computer hardware; accompanied with five years of related experience. Leo Williams had twelve (12) years of experience in the Facilities department at Lockheed as an electrician. In addition having related experience in all six areas, he also possessed some college experience from Delgado.
Eugene Holmes possessed over eleven (11) years of experience as an electronic technician. Mr. Bryant and Mr. Gibson testified that Mr. Holmes' experience was similar to the work Control Mechanics perform, i.e., repairing computer hardware and PLC's. Holmes also had an electronics certificate from the Institute of Electronics Technology and had accumulated college credit from Delgado and UNO in the process of pursuing an electrical engineering degree.
Willie Henderson had six (6) years of training and experience in electronics during his service in the Navy. Mr. Gibson and Mr. Bryant testified regarding his training on complex systems, including pneumatics, hydraulic, and computer hardware.
*914 Dennis Caddell had over 26 years of computer hardware, software and peripherals experience at IBM. He also worked on process control computers in manufacturing facilities similar to Lockheed.
Based on each candidates qualifications, it seems reasonable to conclude the jury found Motton was clearly better qualified than Dennis Caddell and Willie Henderson. Mr. Caddell only had extensive experience in one of the six requisite areas: troubleshooting and maintaining computer hardware. He had no experience in the remaining five areas. Comparing Mr. Caddell to Ms. Motton, she has extensive experience in pneumatics, electronics, and mechanical. Although, she has limited experience in PLCs and computer hardware, it is reasonable to conclude that the jury found Ms. Motton was "clearly better qualified" than Mr. Caddell.
In addition to Mr. Caddell, it is reasonable to conclude the jury found Ms. Motton was "clearly better qualified" than Mr. Henderson. Mr. Henderson was an electrician and only received training on various systems including pneumatics, hydraulic, and computer hardware. In contrast, in addition to her extensive experience in the areas of pneumatics, electrical, and mechanical, she was also knowledgeable in the area of hydraulics. Ms. Motton had over twenty-six (26) years of practical experience compared to Mr. Henderson's limited training. It is reasonable to conclude Ms. Motton was "clearly better qualified" than Mr. Henderson.
Finally, Lockheed argues Ms. Motton failed to establish sex was the determinative factor in failing to promote her. It is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Reeves, 530 U.S. at 147, 120 S.Ct. at 2107. Specifically, the Supreme Court held:
The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination. Id.

Id., quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra at 844; Virgil v. American Guarantee Liability Ins. Co., 507 So.2d 825 (La.1987).
The case sub judice was tried before a twelve-member jury for one week. The jury heard testimony from Lockheed and Ms. Motton. On the disposition action form completed by Lockheed, the defendants claimed Ms. Motton had no experience in computer hardware, PLC, or pneumatics. The record shows Ms. Motton had some experience in computer hardware on a large mainframe computer, the Hughes Circuit Analyzer. She had extensive experience in pneumatics, and received training in PLCs. We find it reasonable to believe the fact finder, the jury, rejected Lockheed's explanation for not hiring Ms. Motton. Under Reeves, if the jury rejects the defendants proffered explanation, it is permitted to infer the intentional discrimination. We find the trial court did not err by finding that Lockheed intentionally discriminated *915 against Ms. Motton on the basis of sex.

SECOND ASSIGNMENT OF ERROR
It is also asserted by Lockheed that the trial court's denial of its Motions for Directed Verdict and JNOV was manifestly erroneous. On appeal, the standard of review of directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Wichser v. Trosclair, 99-1929 and 99-1930, p. 3 (La.App. 4 Cir. 2/28/01), 789 So.2d 24, 26, citing Bergeron v. Blake Drilling & Workover Company, Inc., 599 So.2d 827. A Motion for Directed Verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Lott v. Lebon, 96-1328, p. 4 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, 615-616 citing New Orleans Property Dev. v. Aetna Casualty, 93-0692 (La.App. 1 Cir. 4/8/94), 642 So.2d 1312. A trial judge has much discretion in determining whether or not to grant a Motion for a Directed Verdict. Wichser v. Trosclair, 99-1929 and 99-1930, p. 3 (La. App. 4 Cir. 2/28/01), 789 So.2d 24, 26. However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Newpark Resources, Inc. v. Marsh & McLennan of Louisiana, Inc., 96-0935 (La.App. 1 Cir. 2/14/97), 691 So.2d 208, 211.
Our review of the record in this case convinces us that the trial court correctly evaluated the evidence presented by Ms. Motton in concluding that she had borne her burden of proof pursuant to La. R.S. 23:332(A) and that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions based upon the evidence presented. After considering all inferences in the light most favorable to plaintiffs, we do not find that the trial court committed manifest error in denying the defendant's motion for Directed Verdict.
In reviewing a JNOV, the appellate court must first determine if the trial judge erred in denying the JNOV by utilizing the same criteria as the trial judge in deciding whether to deny the motion or not. Anderson v. New Orleans Pub. Serv. Inc., 583 So.2d 829, 832 (La. 1991). Pursuant to the Louisiana Code of Civil Procedure article 1811, the trial court may grant a JNOV on either the issue of liability or damages or both. Robinson v. Fontenot, XXXX-XXXX, XXXX-XXXX (La.2/7/03), 837 So.2d 1280. In Scott v. Hospital Serv. Dist. No. 1, 496 So.2d 270 (La.1986), the Louisiana Supreme Court delineated the grounds warranting the granting of a JNOV. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that a reasonable person could not arrive at a contrary verdict. The motion should be denied if the evidence opposed to the motion is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. Scott, 496 So.2d at 274. In making a determination of a motion for JNOV, the trial court should not evaluate the credibility of the witness, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Anderson, 583 So.2d at 832. When there is a jury, the jury is the trier of fact. Scott, 496 *916 So.2d at 273. This concept is the predicate of the rigorous standard for JNOV.
There was ample evidence presented at trial that would allow a reasonable jury to find that Ms. Motton satisfied her initial burden of establishing a prima facie case of unlawful discrimination and that although defendant, Lockheed articulated some legitimate, nondiscriminatory reason for rejecting Ms. Motton as Control Mechanic, reasonable jurors could conclude that those reasons were not true reasons, but merely a pretext for discrimination based upon the fact that Ms. Motton was a female.
After review of the evidence in the record, we cannot say that the facts and inferences point so strongly in favor of the defendant that reasonable persons could not reach any conclusion other than that Lockheed did not discriminate against Ms. Motton, for the position of Control Mechanic on the basis of her sex.

THIRD ASSIGNMENT OF ERROR
Lockheed further avers that the jury verdict on sex discrimination was tainted by the admission of evidence regarding Motton's inability to answer most of the technical questions asked during her Control Mechanic interview, an issue it asserts was decided by this Court in granting Mr. Bryant and Mr. Gibson's Motion for Summary Judgment (Motton I). Lockheed filed a pre-trial Peremptory Exception of Res Judicata seeking to bar the admission of evidence and the re-litigation of Motton I. The trial court denied defendant's Res Judicata exception as to the exclusion of evidence regarding claims resolved by Motton I. Lockheed asserts that the admission of this evidence prejudiced them because such evidence had a substantial effect on the outcome of the case. However, plaintiff, Ms. Motton asserts that the dismissal of her defamation claims against Mr. Gibson and Mr. Bryant did not make the evidence of pretext in support of her sexual discrimination claim inadmissible.
Res judicata is stricti juris and any doubt as to the identity of claims or parties must be resolved in the plaintiff's favor. Kelty v. Brumfield, 93-1142 (La.2/24/94), 633 So.2d 1210, 1215. Louisiana law on res judicata precludes the re-litigation of the object of a judgment only when there is an identity of parties, identity of cause and an identity of the thing demanded. Evaluations of credibility have no place in determining Summary Judgment. Williams v. Metro Home Health Care Agency, XXXX-XXXX (La.App. 4 Cir. 5/8/02), 817 So.2d 1224, 1227. Ms. Motton's defamation claims in Motton I were dismissed in a Summary Judgment proceeding. In contrast, the issue of pretext is a credibility determination and the dismissal of Ms. Motton's defamation claim in Motton I could not accurately serve as the basis for the exclusion of evidence of pretext, which is solely a credibility determination.
Therefore, we do not find that the trial court committed manifest error in allowing evidence that was submitted to support Ms. Motton's claims, which were addressed in Motton I, in the case sub judice.

FOURTH ASSIGNMENT OF ERROR
In its fourth assignment of error, Lockheed asserts that the jury abused its discretion in awarding compensatory damages for sex discrimination. Lockheed avers that Ms. Motton's being passed over for the Control Mechanic's position in 1995 and remaining employed at Lockheed, together with the lack of corroboration and medical evidence to support her damages, indicate that the cases awarding no damages for emotional distress to employment *917 discrimination plaintiffs are equally applicable in the case at bar.
The standard in reviewing damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages; in effect, the award must be so high or so low in proportion to the injury that it shocks the conscience. As to quantum issues, appellate court's initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then only to assist the court in determining the highest or lowest point which is reasonable within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332, 336 (La.1976); Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993).
Discretion vested in the trier of fact in awarding general damages is great, and even vast, so that an appellate court should rarely disturb an award of general damages. In the case sub judice, after taking into consideration all the evidence submitted by the parties, the trier of fact, the jury, awarded Ms. Motton $100,000 in damages for emotional distress or mental anguish and $30,000 in back pay. Ms. Motton testified that in addition to losing sleep and experiencing extreme stress and mental anguish as a result of being passed over for the Control Mechanic position, she continues to feel humiliated and insecure professionally and personally. Although Lockheed asserts that the evidence was insufficient for a reasonable jury to conclude that Ms. Motton suffered $100,000 in emotional anguish, we disagree. Ms. Motton testified that she suffered depression, embarrassment on both a professional and personal level, extensive stress, sleeplessness, and insecurity as it relates to her professional ability. Judgments regarding noneconomic damages are notoriously variable; we have no basis to reverse the jury's evaluation.
It is only when the award is, in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, that the appellate court should increase or reduce the award. Sommer v. Sate of Louisiana, Department of Transportation and Development, 97-1929, p. 17 (La.App. 4 Cir. 3/29/00), 758 So.2d 923, 934. In the present case we do not find that a reduction of Ms. Mottons award is merited.

FIFTH ASSIGNMENT OF ERROR
As cross appellant, Ms. Motton asserts that the trial court erred in reducing her attorney's hours and its denial of enhancement. In contrast, Lockheed avers that the attorneys fee awarded to Ms. Motton was an abuse of the trial court's discretion. Lockheed contends that because Ms. Motton only prevailed on half of her claims, the attorney's work was duplicative at a rate that is in excess of community standards. La. R.S. 23:1006D provided:
D. A plaintiff who has a claim against an employer for discrimination in employment may file a suit in the district court for the parish in which the alleged discrimination occurred seeking general or special compensatory damages, back pay, restoration of employment, related benefits, reasonable attorney's fees, and court costs.
In addition to La. R.S. Title 23, the Louisiana Human Rights Act (LHRA) also provides for the availability of an award *918 for attorney's fees for victims of employment discrimination. LHRA § 2264 provides:
Any person deeming himself injured by any alleged violation of the provisions of this Chapter shall have a civil cause of action in district court to enjoin further violations and to recover the actual damages sustained by him, together with the costs of court and a reasonable fee for his attorney of record, all of which shall be in addition to any other remedies contained in this Chapter.
An award of attorney's fees, while subject to the manifest error standard of review, must nevertheless be reasonable. La. R.S. 23:1201(F). Factors to be considered in imposing attorney's fees include the degree of skill and work involved, the amount of the claim, the amount recovered, and the amount of time devoted to the case. "The award of attorney's fees is a type of penalty which is the imposition of the attorney's fee rather than the amount of the fee which must be assessed in accordance with law, and be reasonable." Sims v. Sun Chemical Corp., 34,947, p. 5 (La.App. 2 Cir. 8/22/01), 795 So.2d 439, 442.
The trial court found that two-hundred ($200.00) is the proper hourly rate for the services of Clement P. Donelon ("Mr. Donelon"); that of the eight-hundred thirty seven (837) hours Ms. Motton submitted for his services, Mr. Donelon spent five-hundred sixty seven and nine tenths (567.9) hours litigating Ms. Motton's successful sexual discrimination claim. The trial court deducted forty (40) hours for the unsuccessful defamation claim and one hundred sixty six (166) hours for billing judgment. Of the six hundred thirty one (631) remaining hours of Mr. Donelon's time, the trial court deducted ten percent (10) for Ms. Motton's unsuccessful race discrimination claim. The trial court reasoned that the remaining five hundred sixty seven and nine tenths (567.9) hours is the amount of time Mr. Donelon reasonably spent litigating Ms. Motton's sexual discrimination claim, and this is the amount of time for which Ms. Motton was compensated for the services of Mr. Donelon. In addition, the trial court awarded Ms. Motton attorney's fees for the services of Dale E. Williams ("Mr. Williams") at an hourly rate of one hundred seventy-five dollars ($175.00) for nine and twenty-five hundredths (9.25) hours of time, which Mr. Williams spent litigating Ms. Motton's claims.
After careful review of the record, we find that both the award of attorney's fees and the imposition of the attorney's fee are in accordance with law and are reasonable.

ASSIGNMENT OF ERROR ASSERTED BY MS. MOTTON
As cross appellant, Ms. Motton also asserts that the trial court erred in denying her front pay. A court is authorized to remedy unlawful employment discrimination practices by ordering instatement or front pay as the court deems appropriate. Gobert v. Babbitt, 2000 WL 1876254, 84 Fair Empl. Prac. Cas. (BNA) 1437, 1439 (E.D.La.12/21/00). Although a court may award front pay if instatement is not feasible, instatement is the preferred remedy in these cases. Deloach v. Delchamps, Inc., 897 F.2d 815 (5th Cir.1990). As a prospective make-whole remedy, front pay at best "can only be calculated through intelligent guesswork." Sellers v. Delgado College, 781 F.2d 503, 505 (5th Cir.1986). "[W]e recognize its speculative character by according wide latitude in its determination to the district courts." Id. Thus, it is within the court's vast discretion to determine if either instatement or front pay should be awarded.
In its Reasons for Judgment, the trial court found that there was no evidence that there was an available Control Mechanic *919 position at Lockheed and that all four Control Mechanic positions, to which Ms. Motton originally applied, had been filled by other viable candidates. Therefore, the trial court reasoned that instatement of Ms. Motton into a Control Mechanic position was not feasible.
In determining whether front pay was appropriate, the trial court considered Ms. Motton's attempt to mitigate her damages. According to the evidence presented, Lockheed offered Ms. Motton a promotion to Labor Grade 1 Systems Test Mechanic position in July 1998, which she refused. Albert Labat, Lockheed's Manager, testified that this position would have placed Ms. Motton in the same Labor Grade and pay scale as the Control Mechanic position. The trial court reasoned:
The plaintiff contended that she refused this promotion because it would have required her to work a midnight shift. However, the plaintiff failed to present any other testimony or evidence to substantiate this claim.... As such, the Court cannot hold that the plaintiff satisfied her duty to mitigate her damages. The plaintiff is, therefore, not entitled to a front pay award.
After careful review of the evidence, we do not find that the trial court abused its vast discretion in ascertaining that Ms. Motton failed to mitigate her damages when she refused a promotion to a Labor Grade 1 Systems Test Mechanic position and therefore was not entitled to a front pay award.

CONCLUSION
For the foregoing reasons, we do not find that the trial court or the jury committed manifest error and therefore, affirm the holding of the trial court.
AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Ms. Motton has filed an application for rehearing requesting the Court address the issue of attorney's fees for work done in defending the appeal in this matter. We grant Ms. Motton's application for re-hearing, amend the judgment of the trial court, and as amended affirm the judgment of the trial court.
Due to the chilling effect it may have on the appellate process, this Court remains cautious in awarding attorney fees for frivolous appeals; however, in cases where attorney fees were awarded by the trial court, the appeal has necessitated additional work on the part of plaintiff's counsel, and the defendant has obtained no relief on appeal, we do find that an award of attorney fees for the defense of an appeal is merited. See Sims v. Sun Chemical Corp., 34,947 (La.App. 2 Cir. 8/22/01), 795 So.2d 439. Tillmon v. Thrasher Waterproofing, 00-0395 (La.App. 4 Cir. 3/28/01), 786 So.2d 131.
To wit, in the case sub judice, upon a finding that Ms. Motton properly requested attorney's fees associated with the appeal and upon a showing that additional work, in the amount of 171.00 hours, on the part of plaintiff's counsel was necessitated at a rate of $200.00 per hour, we award the plaintiff additional attorney's fees in the amount of $34,000 for work required to successfully litigate this matter on appeal. The judgment in favor of plaintiff is amended to award an additional $34,000 in attorney's fee. In all other respects, it is affirmed.
AMENDED; AS AMENDED AFFIRMED.
MURRAY, J., concurs in part and dissents in part with reasons.
*920 MURRAY, J., concurs in part and dissents in part with reasons.
I concur in the grant of rehearing in order to award attorney's fees for the work of Ms. Motton's counsel on appeal. On rehearing, Ms. Motton asserted a claim for additional attorney's fees pursuant to the applicable statutory provisions authorizing attorney's fees to a prevailing plaintiff in this type of employment discrimination case. Because she did not assert a claim for attorney's fees for a frivolous appeal, I find the discussion of frivolous appeal principles by the majority to be somewhat misleading.
Although I agree with the majority that additional fees are to be awarded, I disagree with the amount awarded. The trial court found $200 to be a reasonable hourly rate for work done by Ms. Motton's attorney through trial. We affirmed that finding. An appropriate award for attorney's fee for work done by Ms. Motton's attorney in connection with this appeal, therefore, turns on determining the number of hours reasonably expended in defending the appeal. Ms. Motton's attorney submitted a billing statement showing that he spent 171 hours working on the appeal. The majority bases its award on that figure.
The trial court allowed 567.9 hours for all the work done by counsel in preparing and trying the case, which involved two removals to federal court, two remands to state court, motion practice, including defending motions for summary judgment, discovery, and a six day trial. By comparison, it is difficult to accept that 171 hours reasonably were expended in defending the appeal.
I, therefore, respectfully concur in part and dissent in part.
NOTES
[1] Lockheed is divided into two departments: Production and Facilities. The function of the Production Department is to build the external tank of the space shuttle for NASA. In contrast, the Facilities department trouble-shoots, maintains, and repairs the equipment and buildings at Lockheed.
[2] Mr. Mazant is currently a supervisor in the Production Department.
[3] Intentional discrimination in employment

A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
(1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.
(2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, or national origin.
[4] At the time suit was filed, the plaintiff cited violation of La. R.S. 23:1006, which has been repealed. La. R.S. 23:332 is substantively the same; therefore we shall apply the current applicable statutes.