| | | |
|---|---|---|
| **BREJEAN MS. BALANCIER** | * | **NO. 2022-CA-0255** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **SEWERAGE & WATER** | * | |
| **BOARD OF NEW ORLEANS** | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9102
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Pro Tempore James F. McKay, III)

*LOBRANO, J., CONCURS IN THE RESULT*
*MCKAY, J. PRO TEMPORE, CONCURS IN THE RESULT*

Ashley Ian Smith
Darryl Harrison
Yolanda Y. Grinstead
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street
New Orleans, LA 70165

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**OCTOBER 19, 2022**

Defendant-Appellant, Sewerage and Water Board of New Orleans ("S&WB"), seeks review of the Civil Service Commission ("the Commission")'s decision, which found that Plaintiff-Appellee Brejean Balancier's complaints of potential illegal activity caused her termination of employment and, therefore, ordered her reinstatement with back pay and all other emoluments of employment. For the reasons that follow, this Court affirms.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ms. Balancier was hired by S&WB on February 4, 2019, as a Management Development Analyst I, in the Purchasing Department of the Procurement Division of S&WB. Ms. Balancier's duties involved receiving requisitions, completing purchase orders, advertising bids, hosting bid meetings, and administrative work in the Procurement Division. Ms. Balancier was hired as a probationary employee, pending a working test period. Initially, Ms. Balancier was supervised by Conestler Green. Ms. Green testified that Ms. Balancier was a "good employee", and also gave Ms. Balancier a favorable Performance Assessment on August 6, 2019, praising Ms. Balancier for expediting all of her work assignments. Ms. Balancier's co-workers also testified to her congeniality and professionalism at the Commission's hearing.

Pattie Wallace began supervising Ms. Balancier on June 24, 2019, in her role as Purchasing Manager. The record reflects that there were several workplace conflicts between Ms. Balancier and Ms. Wallace, and on October 11, 2019, Ms. Wallace recommended in a memorandum that Ms. Balancier be terminated. Ms. Balancier was thereafter terminated by S&WB on October 25, 2019. In the memorandum recommending Ms. Balancier's termination, Ms. Wallace related events that took place in July and August 2019, described as "[i]nsubordination" by Ms. Wallace. These events, referred to below as "the Piccadilly order", are the crux of this appeal, and are therefore described in detail.

***The Piccadilly Order***

During Hurricane Barry, in July 2019, essential S&WB personnel were required to maintain various S&WB facilities, such as pump stations. Meals were provided by S&WB for these employees, catered by Piccadilly, and which would later be reimbursed by the Federal Emergency Management Agency ("FEMA").

On July 30, 2019, Ms. Balancier was directed by Ms. Wallace to prepare a purchase order for the meals provided by Piccadilly during the storm, based on a spreadsheet provided by Ms. Wallace showing the number of meals S&WB ordered. However, shortly thereafter Ms. Balancier was advised by S&WB Accounting of inconsistencies between the purchase order and Piccadilly's invoice. Specifically, Piccadilly's invoice showed 591 meals delivered, while the purchase order (based on the supporting documentation provided by Ms. Wallace) showed a figure of 590.

On August 16, 2019, Ms. Wallace directed Ms. Balancier to obtain a revised invoice from Piccadilly for the days and meals in question. However, after Ms. Balancier was unable to contact Piccadilly she began to reach out to S&WB

employees in an attempt to trace the cause of the error. However, the S&WB

employees that Ms. Balancier spoke to were unable to rectify the situation, as they

believed their numbers to be accurate. Further, Ms. Balancier discovered additional

inconsistencies in the numbers: the Piccadilly invoices showed meals delivered on

Sunday, July 14, 2019, while the supporting documentation provided by Ms.

Wallace showed no meals received for that day. At this point, Ms. Balancier began

to suspect that some aspect of the Piccadilly order was fraudulent, and reported her

discoveries to Ms. Wallace. Ms. Balancier told Ms. Wallace that she was

uncomfortable issuing the purchase order under these circumstances. Following

that conversation, Ms. Wallace emailed Ms. Balancier and directed her to just

obtain a revised invoice from Piccadilly, and *not* to investigate the accuracy of the

supporting documentation.

Roughly contemporaneously, Ms. Balancier reported these events to

S&WB's Internal Audit Department, and to S&WB Legal. An attorney for S&WB

advised Ms. Balancier to report the matter to Ms. Wallace, who, as described

above, was already aware of the situation.

### *Ms. Balancier's Appeal*

Following her termination, Ms. Balancier timely appealed her termination

with the Civil Services Commission. Ms. Balancier alleged that her termination

was a result of discrimination, both as to her sex[1] and as to her conduct in reporting

potential illegal activity (i.e. whistleblower discrimination). Following an

evidentiary hearing, the Commission found that Ms. Balancier had not carried her

burden as to the sexual discrimination claim, but granted her appeal based on the

---

[1] Ms. Balancier was terminated while out on maternity leave, and, in addition to her whistleblower claim, alleged that her termination was the result of discriminatory treatment on account of her pregnant condition.

finding that her termination was caused by her whistleblowing activities. The Commission denied S&WB's application for rehearing, and this timely appeal followed.

## ASSIGNMENTS OF ERROR AND STANDARD OF REVIEW

S&WB assigns two errors in this appeal: (1) that the Commission erred in finding that Ms. Balancier was terminated in retaliation for her complaints of potential illegal activity; and (2) that the Commission erred in failing to find that Ms. Balancier was terminated due to her lack of professionalism, her insubordination, and her violations of S&WB policy.

Decisions of the Commission are subject to this Court's review to determine whether they are arbitrary, capricious, or an abuse of discretion. *Byrd v. Dep't of Police*, 2012-1040, p. 9 (La. App. 4 Cir. 2/6/13), 109 So. 3d 973, 980. Factual findings of the Commission will not be set aside unless they constitute manifest error or are clearly erroneous. *Id.* at p. 10, 109 So. 3d at 980. Questions of law and procedure are reviewed *de novo*. *Id.*

## DISCUSSION

Generally, probationary employees in the Civil Service such as Ms. Balancier may be fired without cause, and have no right of appeal with the Commission. *Johnson v. Sewerage & Water Bd. New Orleans*, 2015-0950, p. 16 (La. App. 4 Cir. 3/30/16), 190 So. 3d 785, 796 (no need for cause); *Harness v. New Orleans Recreation Dev. Comm'n*, 2017-0107, p. 3 (La. App. 4 Cir. 6/14/17), 222 So. 3d 820, 822 (no right of appeal). Nevertheless, "all employees have a right not to be subject to discipline based on discrimination. This holds true for discrimination based on whistle-blowing activities." *Moore v. New Orleans Police Dep't*, 2001-0174, p. 8 (La. App. 4 Cir. 3/7/02), 813 So. 2d 507, 511 (citation

4

omitted). Thus, probationary employees "[can] be terminated for any reason other than discrimination based on his whistle-blowing activities." *Id.*

To that end, the Rules of the Civil Service Commission provide that even probationary employees have a right to appeal when they are "subjected to discipline or discriminatory treatment by an appointing authority because he or she gives information, testimony, or evidence in a prudent manner to appropriate authorities concerning conduct prohibited by law or regulation which he or she *reasonably believes* to have been engaged in by any persons." Civil Service Rules, Rule II, Section 10.1 (emphasis added). Thus, it is of no moment whether or not the Piccadilly order - or any actions by Ms. Wallace, S&WB, or Piccadilly - constituted fraud. Rather, the relevant inquiry is whether Ms. Balancier *reasonably believed* she was reporting conduct that was prohibited by law, or regulation, and whether she was terminated for so reporting.

In the Commission's hearing, Ms. Balancier provided the grounds for her belief that the Piccadilly order was fraudulent: training that she received from S&WB itself regarding governmental fraud. At the hearing, Ms. Balancier introduced into evidence some of the documents provided to S&WB employees at this training. These documents, in relevant part, describe "Procurement Fraud" by identifying circumstances which, arguably, were present in the Piccadilly order. For instance, in defining "Billing Fraud" the documents list "[s]ubmission of false, duplicate, or inflated invoices by a supplier"; in defining "Delivery Fraud" the documents list "[f]alse or exaggerated requests for reimbursement of expenses or duplication." Furthermore, when advising S&WB employees of the "Warning Signs of Fraud", the documents list "[n]o records", "missing good[s]/services", and

"total payments exceed total purchase order" as things for which employees should be watchful.

In light of (1) the training Ms. Balancier received regarding procurement fraud, (2) the inconsistencies between the Piccadilly invoice, the purchase order, and the supporting documentation provided by Ms. Wallace, and (3) Ms. Wallace's instruction that Ms. Balancier should not investigate the accuracy of the supporting documentation, this Court cannot say that the Commission was manifestly or clearly erroneous in finding that Ms. Balancier had a reasonable belief that she was reporting potentially illegal activity. The Commission's finding is further supported by the fact that Ms. Balancier reported her suspicions to the proper persons within S&WB – her supervisor Ms. Wallace, the Internal Audit Department, and S&WB Legal. Finally, the reasonableness of Ms. Balancier's belief is corroborated by her subsequent Public Records Request, which when returned showed different results for employees present at S&WB facilities on the days in question than was set forth in Ms. Wallace's supporting documentation.

Of course, Ms. Balancier's reporting of potentially illegal activity does not, by itself, immunize her from termination or grant her rights to appeal. Rather, Ms. Balancier was required to show that her whistleblowing activity was the reason for her termination; in other words, Ms. Balancier had the burden to show causation.[2] Although it is often difficult for a plaintiff to prove discriminatory intent as the cause of a termination (rare is the defendant who will admit outright to such a motive, and "[t]here will seldom be 'eyewitness' testimony as to the employer's

_____

[2] Although the burden of proof in Civil Service Commission appeals generally lies with the appointing authority (i.e. the employer), the burden is flipped when an employee alleges discrimination. Rule II, Section 4.8, of the Rules of the Civil Service Commission for the City of New Orleans ("In all cases of alleged discrimination, the burden of proof on appeal, as to the facts, shall be on the appellant.")

mental processes." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S. Ct. 1478, 1482 (1983).) However, Ms. Balancier's burden was significantly lightened in this case, as the record reflects that her actions in the Piccadilly order incident – termed as "insubordination" by S&WB – were, in fact, one of the expressly enumerated causes for her termination. Although the letter sent to Ms. Balancier to inform her of her termination did not mention the Piccadilly order, it did cite "insubordination" as a cause and the memorandum prepared by Ms. Wallace recommending Ms. Balancier's termination makes it clear that the "insubordination" referred, at least in part, to Ms. Balancier's actions in the Piccadilly order.

S&WB argued to the Commission, and now argues to this Court, that Ms. Balancier was not fired due to her reports of potentially illegal activity, and that there were other legitimate justifications for her termination. Specifically, S&WB points to workplace disputes between Ms. Balancier and Ms. Wallace ("lack of professionalism") and the fact that Ms. Balancier left her desk without advising her superiors ("violations of Board Policy"). However, even when briefing this Court, S&WB continues to list "insubordination" as a cause for Ms. Balancier's termination.

Although unaddressed by recent Civil Service-specific jurisprudence, this Court employs the *McDonnell Douglass* framework for discrimination cases where there is a "mixed-motive"[3] as to the employer's reason for terminating an employee.[4] *Motton v. Lockheed Martin Corp.*, 2003-0962, p. 13 (La. App. 4 Cir.

---

[3] "Mixed motive" cases are those where the employer makes a showing of alternative, legitimate grounds for termination, rather than the discrimination alleged by the plaintiff.

3/2/05), 900 So. 2d 901, 913. Under that framework, once the defendant has shown a legitimate nondiscriminatory reason for terminating the employee, the burden shifts back to the plaintiff to show that the defendant's proffered justifications are unworthy of credence. *Id.* However,

> After a case has been fully tried on the merits, the *McDonnell Douglas* burden-shifting analysis ceases to be of import to an appellate court. Instead, our inquiry becomes whether the record contains sufficient evidence to support the conclusions reached by the [factfinder]. *Deffenbaugh–Williams,* 156 F.3d at 587. When there is conflict in the testimony, reasonable inferences of fact and reasonable evaluations of credibility should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989).

*Seagrave v. Dean*, 2003-2272, p. 7 (La. App. 1 Cir. 6/10/05), 908 So. 2d 41, 45-46.

Here, this Court cannot say that the Commission was clearly wrong or manifestly erroneous in finding that S&WB's proffered justifications for the termination of Ms. Balancier were not credible. While there was some evidence

---

[4] In 1983, this Court found that the *McDonnel Douglass* framework, which was developed under Title VII of the federal Civil Rights Act, was inapplicable to Civil Service Discrimination cases because "Title VII actions are remedies entirely distinct from state civil service appeals" and because "[La. Const. art. 10, § 8(B)], not the burden of proof in federal age discrimination cases, is the proper standard of proof." *Mixon v. New Orleans Police Dep't*, 430 So. 2d 210, 211 (La. App. 4th Cir. 1983) (citing *Bernard v. L.H.H.R.A.-Southwest Charity Hosp. of Lafayette*, 358 So. 2d 653 (La. App. 1st Cir. 1978)).

However, since *Mixon* was decided, this Court – as well as our colleagues on the First Circuit – have adopted the *McDonnel Douglass* framework in state law discrimination claims. *Motton v. Lockheed Martin Corp.*, 2003-0962, p. 6-7 (La. App. 4 Cir. 3/2/05), 900 So. 2d 901, 909 (noting that "Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination law"); *Seagrave v. Dean*, 2003-2272 (La. App. 1 Cir. 6/10/05), 908 So. 2d 41. The *McDonnel Douglass* framework was adopted to facilitate circumstantial proof of discrimination in the absence of difficult-to-obtain direct evidence or where the employer alleges other, legitimate reasons for the employment action, as in the case *sub judice*. *Motton*, 2003-0962, p. 6, 900 So. 2d at 909.

that the dispute was largely personal between Ms. Balancier and Ms. Wallace, the Commission's decision noted that

> Ms. Balancier's supervisor treated her questions about the discrepancy between the purchase order and the invoice as insubordinate behavior, and based her termination, in part, on this claimed insubordination. This point of view undermines Ms. Wallace's conclusion that Ms. Balancier was "disruptive" and had "inability to work as part of a team" - - both given as reasons for Ms. Balancier's termination. Ms. Wallace's opinion of Ms. Balancier in these respects was likely influenced by Ms. Balancier's complaint of suspected illegal activity.

Considering the great deference afforded to the factfinder regarding credibility determinations, this Court cannot say that the Commission's finding of whistleblower discrimination was clearly wrong or manifestly erroneous. There was certainly sufficient evidence in the record to support that conclusion, as S&WB has never disputed that Ms. Balancier's "insubordination" regarding the Piccadilly order was, at least in part, the reason for her termination.

## CONCLUSION

For the foregoing reasons, and considering the applicable standard of review and deference afforded to a factfinder's credibility determinations, this Court finds that the Commission's decision was neither clearly erroneous, manifest error, arbitrary, capricious, nor an abuse of discretion. Accordingly, we affirm the decision of the Commission.

**AFFIRMED**

9