LOMBARD, Judge.
pThe defendant, the Sewerage <& Water Board of New Orleans, appeals the judgment rendered in favor of the plaintiff/claimant,! Catherine Johnson, awarding her workers’’ compensation benefits, imposing penalties, and assessing costs and attorney’s fees against the defendant. After review of the record in light of the applicable law and arguments of the parties’ counsel, the 'judgment is affirmed in part and reversed in part.

Relevant .Facts and Procedural History

The plaintiff -was hired by the defendant on April' 1, 2013. During her six-month probationary period, on July 26, 2013, the plaintiff was injured during the course and scope of her employment. On August 15, 2013, a pre-termination Rearing was held and her employment was subsequently terminated.
*789 The plaintiff filed a “Disputed Claim for Compensation” form with the , Office of Workers’ Compensation on May 27, 2014, indicating disputes over the following issues: (1) payment of wage benefits; (2) entitlement to temporary total disability (“TTD”) status; and (3) entitlement to Yo-cation Rehabilitation. In addition, the plaintiff requested “[penalties for failure to timely reimburse mileage [¿eperises [sic].” The defendant answered- on June 23, 2014, denying the plaintiffs allegation and that she was entitled to compensation. A hearing was held on March 5, 2015, before a workers’ compensation' judge[1] and the following evidence were adduced:
The plaintiff testified that on the day of her injury, she reported it, was sent for treatment, placed on restricted duty, and she was still being treated for the injury. She stated that she was initially hired to work in the “emergency department,” taking calls over the phone and taking information about bill payments, but she 'conceded that she had trouble inputting data into the. database. . The plaintiff alleged that after a confrontation with another employee, she was transferred, to another department where her duties . involved opening and closing accounts, as well .as checking account balances. She testified that no supervisor ever notified her that her work was unsatisfactory.
The plaintiff testified that on August '9, 2013, her request for a day off was approved by “Ms. Brown,” but that when she returned to work the following Monday, she received a written notice that as ■ a probationary employee she was not authorized to take time off and that she had left her job without permission. That same day she was sent for .her “six month drug test,” which indicated that she was positive for Butalbital, a drug prescribed by the employer’s doctor.[2] The plaintiff submitted into evidence a drug test report, indicating that she tested positive for a | .¡barbiturate with the notation “No RX received; .Employee terminated per SW <& B,” signed by “J. Elder” on “9-13-13,” and verified by “J. Elder” on “9-18-13.” In addition, the plaintiff submitted a letter dated .September 20, 2013, notifying her that she had tested positive for Butalbital pursuant to the “comprehensive substance abuse screening procedure for all employees” and that her appointing authority would be in contact with her to discuss the appropriate course of action to remedy the situation.
The plaintiff began treating with a doctor of her own choice and requested mileage reimbursement from her employer. She could not recall when she was reimbursed for her mileage expenses, but agreed thát she retained a lawyer to get reimbursement and that the mileage reimbursement requests were sent more than once to the defendant. The plaintiff submitted into evidence a letter dated September 19, 2014, requesting mileage reimbursement, and a'letter dated January 6, 2014, requesting reimbursement of the mileage initially requested in September 2013.
The plaintiff testified that she was still treating with Dr. Bourgeois who recommended surgery for her, but her employer refused to pay the related medical expenses because she had not tried, physical therapy. She. testified that she had, in fact, gone through two courses of physical therapy.for a total of nineteen sessions. *790 She stated that she was still restricted to sitting work and had only been employed for “two or three weeks” since her termination by the defendant.
|4On cross-examination, the'plaintiff acknowledged that her term of employment with the defendant was approximately five and a half months and during that entire period she was a probationary employee. She conceded that in the first department in which she worked, “[t]hey were always saying that you need to answer the phone faster,” but asserted that she had no other problems in that department. She stated subsequently, however, that she was transferred to the “Mail Resolve” department after a confrontation with her supervisor and because “I wasn’t answering the phone at a prompt time.” The plaintiff testified that she had no problems in her néw department and when she asked, “they told me I was doing good.”
The plaintiff testified that she asked her supervisor (Ms. Brown) three times about taking leave on August 9, 2013, and was given permission. However, when she re-, turned on August 12, 2Q13,. she was given notice that there would be a meeting to determine if she was going to be terminated for leaving her job without authorization. She asserted that she did not have a pre-termination hearing but, rather, they had a meeting “on Wednesday” and, after she refused to resign (because she had not left without authorization), she was terminated.
The plaintiff conceded that the defendant had paid for all of her medical treatment and for all submitted mileage reimbursements up until the date of the hearing. She also conceded that the letter stating that she was terminated for a failed drug test was sent by the City of New Orleans and not the defendant, that the Drug Test Report did not indicate that she was terminated by the Sewerage & (¡¡Water Board because of a failed drug test; and that her separation notice from her employer did not indicate that her termination was because of a failed drug test.
On redirect, the plaintiff acknowledged that it was her understanding when she was hired that all new employees were placed pn a probationary period. The plaintiff submitted into evidence her medical records from .treating physicians, the defendant’s separation notice of August 20, 2013, and a termination letter from the City of New Orleans dated September 20, 2013. After submitting her medical records into evidence, counsel for the plaintiff rested.
As its first witness, the defendant' presented Natika Madagal Vassal from the defendant’s personnel department. She identified documents from the plaintiffs personnel file:- (1) a letter from Ms. White in the personnel department stating that the plaintiff was employed as of April 1, 2013, and would be on probation for at least six months; (2) the notice of transfer from the emergency telephone center to the customer service, mail resolve department dated June 12, 2013, for “change of duties,” signed 'by Jackie Shine and Antoinette Jenkins; (3) a letter dated August 8, 2013, to the plaintiffs supervisor advising her that the plaintiffs probationary period would end on September 30, 2013, unless a request for an extension was received in writing;[3] and (4) a Notice of Pre-Termination Hearing dated August 14, 2013, from Antoinette O.- Jenkins to Catherine Johnson, scheduling a meeting for August 15, 2013, to determine whether the plaintiff would be dismissed from em *791 ployment based on “Poor WorkoPerform-anee.”
| (¡In addition, Ms. Vassal identified a “pre-Disciplinary Hearing Form” dated August 15, 2013, recommending immediate termination for “Poor Work Performance'.” The space indicating “Employee Response” was left blank. The “Supervisor’s Response” stated “Catherine Johnson has failed to pérform the required duties that was [sic] assigned to her.”' The supervisor’s signature line is left blank with the notation “Refused to sign” while 'initials appear about the employee signature line; Ms. Vassal" stated however, that it was the plaintiff who refused to sign.
.Finally, Ms. Vassal identified a letter from Marcia A. St. Martin, Executive Director of the Sewerage & Water Board, dated August 16,. 2013, advising the plaintiff that she had been hired. on April .1, 2013 as a probationary employee and after a month of training started in the Emergency Unit on May 1, 2013,. but that she was unable to perform her duties and committed numerous errors. Further, the letter stated that due to her poor work performance, she was “retrained, placed back on the phones and informed that you must improve your job performance.” The letter states that, due to the plaintiffs inability to “adequately perform” her duties in the Mail Resolving unit where she “made several documented errors” and was “unable to perform” required job duties, the plaintiff was transferred on June 5, 2013. Additionally, the letter stated that on August 12, 2013, the plaintiff received a “Formal Written Warning” for leaving her1 job without authorization from a supervisor and that on August 15, 2013, her supervisor held a pre-termination hearing wherein it was deemed that her “continued display or poor |7work performance” was the reason to recommend dismissal. Ms. St. Martin concluded that after reviewing the plaintiff s “entire.work record,” she saw no reason to disagree with the supervisor’s recommendation and advising her that she had thirty days to appeal the ruling to the Civil Service Commission. '
On cross-examination, Ms.- Vassal stated that she was not aware of the plaintiffs failed drug test, did not recall seeing the drug test report; the- Sewerage & Water Board did not have in-house physicians, and she was unaware of who employed “J. Elder.”
Ms. Sherry M. Lavasor, a Senior Officer Pay Specialist for the defendant, testified that the ‘plaintiffs work sheets indicated that she worked on July 26, 2013, returned the next workday (Monday, July 29,' 2013) for work, did not work the following Tuesday and Wednesday, returned on Thursday and worked for one-hour, did not work on Friday,-returned to work the following Monday (August 5, 2013) -and worked Tuesday, Wednesday, and'Friday of that week, but did not work Thursday. Finally, the plaintiffs worksheets indicated that she worked Monday August 12, ¡2013, did not work Tuesday, but returned for one final day, Wednesday, August 15, 2013. Ms. Lavasor confirmed that the plaintiff never previously missed five days in a row during her term . of employment. The plaintiffs work sheets were submitted into evidence.
Ms. Judith Robinson a/k/a Judith Jones testified that she was -the manager of the customer service telephone center and the plaintiffs supervisor in that department. She testified that the plaintiff was transferred out of her department | Sbecause she “wasn’t able to learn what was needed ¡for her- to do as a representative” and that despite six weeks of training she was not able to “grasp” her duties, which included answering customer calls regarding complaints and billing questions, in .addition to opening and, closing accounts, as well as *792 placing accounts under investigation. Ms, Robinson said-that the plaintiffs “biggest problem” was that “[s]he didn’t take directions.” Specifically, Ms. Robinson stated that the plaintiff would not use the tools provided and, as a result, “wouldn’t, couldn’t, wouldn’t” spell the name of streets correctly, which was necessary to provide help to customers. Ms. Robinson said that she told Antoinette -Jenkins, the administrator of customer service, that she couldn’t “use” the plaintiff because “she didn’t want to listen” but Ms. Jenkins decided to give her a “second chance,” transferring her to the mail resolving unit. Ms. Robinson stated that the plaintiffs involvement with another employee in the department had nothing to do with the plaintiffs transfer.
On cross-examination, Ms. Robinson stated that she had personal knowledge of the plaintiffs mistakes, including the misspelling of words, opening wrong accounts, and issuing incorrect work orders.
Mary Anne Brown, the plaintiffs supervisor in the Mail Resolve Department, ex-pláined that the duties of the six clerks in her office included opening and sorting of the mail, processing payments and forwarding the payments to the cashiers. Ms. Brown stated that the plaintiff was assigned to “open, close -accounts, bank drafts, faxes, and other accounts that needed to- be opened.” She | ^identified documents submitted into evidence documenting the plaintiffs errors wherein the plaintiff (1) failed to cancel' an old account when opening a new one on the property which could result in the then current tenant having water erroneously cut off; (2) placed an account in the agent’s name rather that the1 owner’s name (P.N.C. Bank, L.L.C.), which could have resulted in the account being turned over to collection; (3) failed to correctly change a mailing address as requested' by customer which could have resulted1 in water being cut off because the customer would not receive bill; (4) failed to.send a customer’s application for signature, which could have resulted-in water being cut off because the new customer failed to timely return the signed application; (5) opened an account in a wrong L.L.C.’s name, which would have created tax problems for the customer because the name did not match the tax I.D. number; (6) did not close the account of an owner upon the owner’s notification that she had a new tenant, resulting in no notice to the new tenant to apply for services; (7) opened an account in the owner’s name when owner requested water be turned on for HANO inspection, but issued a work order to turn off the water so that HANO would have been unable to complete an inspection; and (8) applied a payment to a wrong account, which would result-in an erroneous delinquent fee. Ms. Robinson testified that she noted each of the errors on the documents the day they were committed. She explained that the documents submitted related only to errors committed by the plaintiff in the month of- August because she had been instructed to bring those and was not instructed to bring documentation of errors committed in July. Ms. Robinson | instated that the plaintiffs errors caused her to be put back in training for two weeks in July and that as long as she worked with a trainer she made no error's. Ms. Brown stated that, -as was her custom, she brought the -errors to the plaintiffs attention when they were committed but did not “write her up” because she was in her probationary period. Ms. Brown conceded that she did not tell the plaintiff that she was in danger of losing her job because of the mistakes.
On cross-examination, Ms. Brown stated that because the plaintiff was a probationary employee she did not have accrued days to take off because of her injury. *793 She conceded that, although the plaintiff was employed in her department for three months, her termination was based on documentation for errors committed on five days in August.
Antoinette Jenkins, Administrative Manager of Customer Service, testified that the plaintiff was terminated because she was unable to perform" her duties successfully in either department under her supervision. She stated that it "was her observation that in the customer service department the plaintiff was “not able' to remember the different screens” or “remember what she was supposed to do.” Accordingly, Ms. Jenkins decided “insteád of terminating her employment to' maybe move her to a department which was a slower pace ... but that didn’t work out.”
On cross-examination, Ms. Jenkins stated that the plaintiff “received write-üps from Ms. Robinson I’m sure.”' She indicated that it was departmental policy for probationary employees to receive write-ups and “we keep a copy in their In files.” Ms. Jenkins asserted that probationary employees were provided with forms- indicating “where they are, where their strengths are, where their weaknesses are.” She stated that she received copies of the documents with Ms. Brown’s notations of errors and that, according to policy, the plaintiff would have received a form indicating her progress related to each of the errors and that a copy of such form would have been kept in her departmental file. Ms. Jenkins asserted that the plaintiff was not terminated because of a work injury but when asked whether she knew “for a fact” that the plaintiff was “written up for the mistakes she made,” Ms. Jenkins equivocated, stating “What I should say is it was documented : ■.. I’m not sure when you say written up, as in, 1 don’t want to use the word punishment, but it as [sic] documented each time, yes ma’am.” She confirmed, however, that documentation was in “the form” where the “supervisor actually write [sic] the comments, where the errors are.” When asked by plaintiffs counsel to identify these “forms” in the records from the plaintiffs files turned over to plaintiffs counsel as a result of counsel’s request for production of documents, Ms. Jenkins stated. that she didn’t see the “ones from the call center,” but the documents^ notating i errors by Ms. Brown were the. “forms” because “there’s [sic] different rules in every department” and “this is the way Ms. Brown would handle her employees.” Under questioning, Ms. Jenkins conceded that the notated documents were not the “forms” she referred to in her prior testimony. She conceded that the plaintiff was never “written up” for the errors in the notated documents because “she was being monitored.”
haWhen .asked whether the plaintiff was “ever written up, given a piece of paper in writing saying these are your mistakes” to be corrected, Ms. Jenkins stated that she never gave the plaintiff anything and could not answer whether anyone in her depart; ment ever gave the plaintiff a warning in writing before her termination that she was making mistakes.
Ms. Jenkins stated that upon transferring the plaintiff to the mail department, she gave Ms. Brown a directive to document the plaintiffs • errors. She again identified the notated documents as being dated August 6, 7, 9, and 12.
Linda Paisant, the Workers’ Compensation Coordinator for the Sewerage & Water Board, testified that the plaintiff reported her injury on July 26, 2013, and was referred for a medical review and drug test. Ms. Paisant stated that the defendant "authorized and paid for all physical therapy requested by the plaintiffs physicians and that all' requests for mileage reimbursement were paid. She ex *794 plained that the plaintiffs claims for TTD benefits were not paid because a claimant must be out of work for five consecutive days before being paid TTD payments and, therefore,, the plaintiff did not qualify. Accordingly, only the plaintiffs “medicals” were paid.
Ms. Paisant indicated that the'mileage reimbursement request for July 26 through September T4, • 2013," for $28.15 “was1 submitted and paid' on [May 28, 2014].” Ms..Paisant stated that mileage reimbursement requests for April 8 through May 22, 2014, were submitted and paid on May 28, 2014. Ms. Paisant stated that there was some duplication as to dates oh requests for mileage reimbursement that hswere not paid, táut that all valid mileage reimbursement requests had been paid. She reiterated that no request for medical payment had been denied. Finally, Ms. Paisant explained that because the plaintiff was not eligible for TTD benefits and was terminated, she was not offered vocational rehabilitation.
The defendant submitted into evidence (1)' the plaintiffs employment letter, confirming'the plaintiffs employment date of April 1, 2013, and her probationary status of “at least six months;” (2) the “change of duties” letter dated June 5, 2013, indicating that the plaintiff was being transferred to the “Mail Resolving -unit” because of her inability to “function properly as a Telephone Emergency rep because of the constancy, concerning incoming calls;” (3) the notice -of transfer dated June 12, 2013, indicating that the. plaintiff was transferred from the position of “Office Assistant Trainee” in the Emergency Telephone Center Group to the position of “Office Assistance Trainee” in the Customer Service-Mail Resolving Group; (4) a letter from the Personnel Department advising that the plaintiff was scheduled to attain Permanent. Civil Service status on September 30, 2013; (5)' various notated documents purporting to show errors by the plaintiff in performance of her duties in the Mail Resdlving unit in August 2013; . (6) a letter dated August 12, 2013, from Ms. Jenkins to the Senior Service Manager requesting the termination of probationary employee Catherine Johnson based on her failure to meet the duty requirements of the Mail Resolving unit and inability to retain information from her training; (7) a Notice of Pre-Termination ,set for August 15, 2013; (8) a Pre-Disciplinary Hearing Form, recommending termination of disemployment for “poor work performance;” (9) a letter of dismissal dated August 16, 2013; and (10) the plaintiffs weekly timesheets for the period beginning July 22 through August 16, 2013.
On August 23, 2015, Workers’ Compensation judge issued the following judgment;
After considering the stipulations, testimony, pleadings, memorandums, evidence and law; the court renders the following decision:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the claimant, Catherine Johnson, had a com-pensable work-related accident on July 26, 2013; and
IT IS FURTHER ORDERED that the claimant suffered the following injuries from the accident of July 26, 2013: her bilateral knees, legs, arms and head; and
IT IS FURTHER ORDERED that the defendant fired the claimant in an attempt to avoid its workers [sic] compensation obligation and not for cause; and
IT IS FURTHER ORDERED that the defendant failed to commence vocational rehabilitation and identify a job for the claimant within :her work restric *795 tions in which she could earn at least 90% of her pre-accident wage; and
IT IS FURTHER ORDERED that the claimant is entitled to temporary total disability benefits in the. amount o‘f $236.76 per week based on An average weekly wage of $355.15 from August 19, 2013 to the present and continuing; and
IT IS FURTHER ORDERED that the claimant is entitled to suppleinental earnings benefits [sic] all' time' periods she was unable to earn at least 90% of ’ her pre-accident wage; and
IT IS FURTHER ORDERED that the defendant shall pay for all medical expenses, medically related travel expenses and medication expenses- in connection with this work-place accident; and
IT IS FURTHER ORDERED that the defendant has failed to reasonably controvert claimant’s entitlement to medical and indemnity benefits and the claimant is entitled to penalties and attorney’s fees for their actions; and
IT IS FURTHER ORDERED that the defendant refused to pay the claimant’s emergency room expenses |1fiand mileage in a timely manner and that the claimant is entitled to penalties and attorney’s fees for their actions; and
IT IS FURTHER ORDERED that penalties are assessed against the defendant in the total amount of $8,000.00 for failure to reasonably controvert indemnity benefits, refusal to timely pay mileage reimbursement request of August 2013, and failure to initiate indemnity benefits.
IT IS FURTHER ORDERED that attorney’s fees are assessed against the ' defendant in the amount of $2⅛,000.00; and
IT IS FURTHER ORDERED that all costs and interest will be paid by defendant including filing costs; and .
IT IS FURTHER ORDERED that judgment be, and hereby is, rendered in favor of the claimant. [Emphasis in original.]
Upon the defendant’s request for findings of fact .and reasons for judgment, the workers’ compensation judge issued “Reasons ' for . Judgment,” ■ stating only that “[t]he Court adopts as its reasons for judgment the well thought out finding of facts, law and conclusion submitted on behalf of Catherine Johnson.”' The post-trial memorandum adopted by the workers’ compensation judge alleged that “[t]his is a classic case of the employer’s attempt to circumvent its duties under the Louisiana Workers’ Compensation statutes by terminating its. injured worker under the guise of a “for cause” termination and concluded in pertinent part that the defendant “failed to prove that her work performance, not her injury, was the cause of her termination.”
The defendant timely appeals this judgment.

Preliminary Matters

Notwithstanding anything that the workers’ compensation judge or counsel may have asserted or argued to the contrary, it is. totally irrelevant to the issues of hnthis case relating to workers’ compensation benefits whether or not the plaintiff was terminated from her employment with the defendant for cause. Assertions to the contrary are red herrings in the context of the workers’ compensation administrative court jurisdiction. The plaintiff was a probationary employee with the Sewerage and Water Board at all pertinent times. Although the. defendant is subject to civil service laws, probationary employees do not come within the ambit of the protection of those laws until a permanent member of the civil service.
*796 A probationary-status civil service employee may be terminated at any time and for virtually any reason. Dept. of Public Safety & Corr. v. Thornton, 625 So.2d 713, 715 (La.App. 1st Cir.1993). Civil Service employees who' have reached permanent ■ status cannot be terminatéd without a lawful cause but there is no such guarantee for probationary employees. See Moore v. New Orleans Police Dept., 2001-0174, p. 7 (La.App. 4 Cir. 3/7/02), 813 So.2d 507. Therefore, “[a] probationary status employee may be terminated at any time and for virtually any reason.” - Id., 2001-0174, p. 8, 813 So.2d at 511 (Tobias, J., concurring). Thus, the plaintiff in this case was an at-will employee who could be terminated without cause. More specifically, La.' Civ.Code. art. 2747 governs the plaintiffs employment,[4] and her discharge was within the defendant prerogative.
If the plaintiff was discharged for filing a workers’ compensation claim, such may be compensatory in accordance with appropriate law, but the workers’ compensation administrative court has no jurisdiction of the matter; only a district court has jurisdiction to determine that issue.
| ^Standard of Review
“Factual findings iri workers’ compensation = cases are'subject to the manifest error or clearly wrong standard of appellate review.” Seal v. Gaylord Container Corp. Banks v. Industrial Roofing & Sheet Metal Works, 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164 (citations omitted) “In applying the manifest error-cleanly wrong standard, the appellate court must determine not whether, the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.” Id. ■

Assignment of Error 1

In its first assignment of error, the defendant argues that the workers’ compensation judge erred as a matter of law by “not applying the initial burden of proof to Ms. Johnson’s, claim of retaliatory termination” and “erred in fact by ‘not considering the Board’s evidence that Ms. Johnson was fired for cause.’ ” The plaintiff does not address any of the defendant’s assignments of error specifically or in depth, stating with regard to this assignment of error only that the workers’? compensation judge, was correct in determining that the defendant fired the plaintiff to avoid workers’ compensation obligations and, therefore,. the plaintiff was owed indemnity benefits.
The intent of the workers’ compensation judge in “ordering” that “the defendant fired the claimant in an attempt to avoid its workers [sic] compensation obligation and not for cause” is unclear. An order is, by definition, a “command, direction, or instruction” or a “written direction or command delivered by a court of judge.” Black’s Law Dictionary, 8th ed., p. 1129. In this case, the workers’ compensation judge’s “order” that the plaintiff was not fired for cause is a non sequitur because it is conclusory rather than directive or instructive in nature. |1sMoreover, the references, to the plaintiff not being fired for “cause” in the judgment, as well as in the plaintiffs, post-trial memorandum adopted by the workers’ compensation judge as his reasons for judgment, misapprehend critical distinctions between probationary and permanent employees within the Workers’ Compensation statutory scheme.[5] Finally, *797 as discussed in more detail below, indemnity benefits require a specific showing as to the claimant’s entitlement to benefits and cannot be awarded as compensation for a finding (even if true) that .'the plaintiff was terminated by the defendant to avoid its statutory workers’ compensation obligations. Moreover, the issue of the plaintiffs termination or status as a probationary employee was not raised-*by the plaintiff in her “Disputed Claim for Compensation” and, as plaintiffs counsel conceded in oral argument, this is not a retaliatory termination lawsuit and La.Rev. Stat. 23:1361 is not applicable [6] to this case; There is no statutory or’jurisprudential authority that supports an1 award of workers’ compensation benefits based on a finding that the employer terminated a | ^probationary employee to avoid payment of benefits.[7] Because a probationary employee’s termination was not’ properly before the workers’.compensation'judge at the hearing and, in any event, is not a statutory basis for an award of workers’ compensation benefits, we vacate that portion of the judgment and pretermit further discussion of this issue.

Assignment of Error 2

The defendant argues that the worker’s compensation judge erred in his application of La.Rev.Stat. 23:1226 and La. Rev.Stat. 23:1203 because the employer has no, duty to offer vocational rehabilitation prospectively when, as in this case, the employee is medically cleared .to return to her existing job. It is of no moment that the plaintiff has been terminated from her position. ■ The plaintiffs appellate brief does not address this argument, claiming only that the plaintiff is entitled to vocational rehabilitations services, TTD benefits and Supplemental Earnings Benefits (“SEB”) because the defendant (a) “did not accommodate her restrictions, as indicated in her medical records when she complained of being on her feet all day,” (b) did hot accommodate her restrictions and “[ojnce -terminated while on restricted duty, she was unable to earn 90% or more of her pre:accident wage; and (c) vocational rehabilitation should have recommended her for jobs she could perform/’ ■
*798 La.Rev.Stat. 23:1203 provides in pertinent part:
A. In every case coming under this Chapter, the employer shall famish all necessary drags, supplies, hospital care and services, medical and surgical treatment, and | gnany non- ‘ medical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services....
B. The obligation of the employer to famish such care, services, treatment, drags, and supplies, whether ■ in state or out of state, is limited to the reimbursement determined, to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as ■ determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less -, v..
* * *
D. In addition, the employer shall be liable for the actual expenses, reasonably and necessarily incurred by the employee for mileage' reason- : ably and necessarily traveled by the , employee in order to obtain the medical services, medicines, and prosthetic devices, which the employer is required to furnish under this Section, and for , the vocational rehabilitation-related mileage traveled by the employee at the di- ■ rection of the employer. When the employee uses his own vehiclé, he shall, be reimbursed at the same rate per mile as established by the state of Louisiana for reimbursement of state employees for use of . their personal vehicle on state busi- ■ ness.¡ ;⅛
E. Upon the first request for authorization . pursuant to R.S. ■ 23:1142(B)(1), for a claimant’s medical care, service, or treatment, the payor, as defined in R.S. 23:1142(A)(1), shall, communicate to the claimant information, in plain language, regarding the procedure for requesting an independent med- , ical examination in the event a dispute arises as to the condition of the employee or the employee’s capacity to wprk, and the procedure for appealing .the . denial of medical treatment,to the medical director as provided in R.S. 23:1203.1. A payor shall not deny medical care, service, or treatment to a claimant unless the payor can document a reasonable and diligent effort in communicating such information. A payor who denies medical care, service, or treatment without making such an effort may be fined an amount not ‘ ' to exceed five hundred dollars or the cost of the medical care, service, or treatment, whichever is more. [Emphasis added.] <•
In turn, La.Rev.Stat. 23:1226 provides in pertinent part: ⅛
"fctA. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be- entitled to prompt rehabilitation services. Vocational rehabilitation services shall be. provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors as established by R.S. 37:3441 et'seq.
*799 B. (1) The goal of rehabilitation service.s is to return a worker with a disability to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
(a) Return to the-same positioh.
(b) Return to a modified position;
(c) Return to a related occupation suited to the claimant’s education and marketable skills. ''
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(f) Self-employment.
(2) Whenever possible, employment in a worker’s local job pool must be,considered and selected prior to consideration of employment in a worker’s statewide job pool.
(3)(a) The employer' shall be responsible for the selection of a licensed professional vocational rehabilitation counselor to evaluate and assist the employee in his job placement" or vocational training. Should the employer refuse to provide these services,,or a dispute arises concerning the work of the vocational counselor, the employee may file a claim with the office to review the need for such services or the quality of services being provided. The employee shall have a right to an expedited summary proceeding pursuant > . to R.S. 23:1201.1(K)(8). The workers’? compensation judge shall set a-hearing date within three days of receiving the motion. The hearing . shall be held not less than ten, nor more than thirty days, after the employer or payor receives notice, delivered by certified or registered mail, of the employee’s motion. The workers’? compensation judge shall provide notice of the hearing date to the employer and payor at the same time and in the same manner that notice of the hearing date is provided to the employee | gaor his attorney. For the purposes of this Section, an employee shall not be required to submit the dispute on the issue ofvocational’ser-vices to mediation or go through' a pretrial conference before obtaining a hearing. The hearing shall be conducted as a rule to show cause.
(b) An employee shall have no right of action against a vocational counselor for tort damages related to the performance of vocational services unless and until he has exhausted the administrative remedy provided for in Sub-paragraph (a) of this Paragraph. The running of prescription shall be suspended during the pendency .of the administrative proceedings provided for in this Paragraph.
[[Image here]]
C. (1) Rehabilitation services required ' for workers with disabilities may be initiated by:
(a) An insurer or self-insured employer by designating a rehabilitation provider and notifying the office.
(b) The office by requiring the insurer or self-insured employer to designate a rehabilitation provider.
(c) The employee, through a request to the office. The office shall then require the insurer to designate a rehabil: itation provider.
(2) Rehabilitation services provided under this Part must be delivered through a rehabilitation counselor approved by the office. [Emphasis added.]
*800 The defendant’s second assignment of error has merit. Nothing in the medical records submitted by the plaintiff indicates that she is restricted from returning to work or physically precluded from working after her injury. Rather, the plaintiff was diagnosed with contusions to her knees and forearm immediately after her injury and cleared to return to work the following day, although with the following limitations: “No prolonged stand and/or walking longer than 15 mins/hr; No squatting and/or kneeling; Must use crutches 95% of time; Should be sitting 67% of the time; No climbing stairs or ladders; Limited use of knees.” The medical records indicate that by August 13, 2013, shortly before her termination, Lathe plaintiff was no longer on crutches and limited only to: “No prolonged standing and/or walking longer than 20 min/hr; No squatting and/or kneeling; Should be sitting 67% of the time; No climbing stairs or ladders; Limited use of both knees.” Moreover, by August 29, 2013, she was medically advised “to Walk 1 mile each day' @ the park.” Subsequently, according to a “Important Message” dated September 5, 2013, in the plaintiffs medical file, the plaintiff called and left the following message: “5 months at job.; Need note stating that she cannot work under these conditions so she can get w/c payment.”
Although the record contains no definitive categorization of the plaintiffs position as an office assistant trainee in the mail resolving unit, the duties (as described by Ms. Brown) (opening and sorting mail, processing payments, and forwarding the payments to the cashiers) are not beyond the medical restrictions indicated in the plaintiffs medical files. Although'a medical note in the file indicates that the plaintiff complained once of being on- her feet “all day,” there is nothing in the record to indicate that standing more than fifteen minutes in an hour (the initial restriction immediately after .the injury) was a physical requirement of her job or that she complained to her employer or alerted her supervisor that the required duties of her position as an assistant office trainee were beyond the medical restrictions imposed as a result of her injury. Specifically, to the extent that the plaintiff complains that the defendant failed to accommodate her restrictions, .there is nothing in the record to indicate that the plaintiff was under medical ordered physical restrictions that implicated the normal duties of her job or that the defendant was advised of these restrictions and, being so advised, failed to accommodate them. The record shows- that the plaintiffs work duties included sitting at a desk, opening mail, resolving issues, and occasionally walking (via an 1^elevator) individual pieces of mail to the cashier. There is nothing in the plaintiffs medical records to suggest that she was unable to physically perform these duties or that she should not immediately return to work. Finally, there is nothing in the record to indicate that the plaintiff ever requested vocational rehabilitation or that she filed a complaint stating that she was being denied vocational rehabilitation.
Under these circumstances, to the extent that the workers’ compensation judge found that the “the defendant failed to commence vocational ■ rehabilitation and identify a job for the claimant within her work restrictions in which she could earn at least 90% of her pre-accident wage” and awarded penalties and attorney fees based on the defendant’s failure to provide vocational rehabilitation, it was clear error. Accordingly, that portion of the judgment pertaining to vocational rehabilitation is reversed.

Assignment of Error 3

The defendant argues the workers’ compensation judge erred in awarding *801 TTD benefits because there is nothing in the record to support a finding that the plaintiff was physically unable to engage in any employment or self-employment and because she never missed the required amount of work to be eligible for TTD benefits. Again, the plaintiff does not specifically address this argument-in her appellate brief, simply reiterating the mistaken proposition, that the trial court was correct in finding that because “the S & WB fired Ms. Johnson in an attempt to avoid its workers’ compensation obligation and not for cause ... it established that the S & WB owed indemnity in the form of temporary total disability and/or supplemental earnings benefits from the time Ms. Johnson was unable to. earn 90% or more of her pre-accident wage.”
La.Rev.Stat. 23:1221 provides in pertinent part:
|2SC ompensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. .
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability. ..
(b) For purposes of Subparagraph (l)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the' employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot- employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (l)(a) of this Paragraph, Whenever the employee is not engaged in any .employment- or . .self-employment as described in - Subparagraph (l)(b) of • this Paragraph, ; compensation for . temporary-'.total disability: shall be •awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature «or character of the employment-or self-employment, includ- *■ ing but- not limited to any and all - odd-lot employment,-sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employ- . ment.
(d) An award.of benefits based on temporary total disability - shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee’s physical condition has improved to the point that continued,'regular treatment by a physician is not required.
li>fiThe defendant’s third assignment of error.has1 merit. As previously discussed, there is nothing in the plaintiffs medical records that supports a finding that she was unable to return to work after her injury. Likewise, there is nothing in the record to indicate that the plaintiffs work duties were contrary to the medical restrictions imposed upon her -by her treat *802 ing physicians. There is no indication in the record that the defendant failed to accommodate these restrictions or- that the plaintiff alerted her supervisors that her work duties were circumscribed by her medical restrictions.
Because there is nothing in the record to support a finding that the- plaintiff was temporarily- totally disabled and unable to work, the- workers’ compensation judge’s “order” that, the plaintiff “is entitled to temporary total disability benefits in the amount of $236.76 per week based on an average weekly wage of- $355.16 from August 19, 2013 to the present and continuing” is clear error. Likewise, to the extent that the judgment awarded penalties and attorney fees based on the defendant’s failure to pay her TTD benefits, it likewise is clear error. Accordingly, -that portion of the judgment related to TTD.benefits is reversed. . -

Assignment of Error 4

The defendant argues that the plaintiff did not meet the burden of proof to be entitled to SEB. Again, the plaintiff does not specifically address this assignment of error in her appellate brief.
La.Rev.Stat. 23:1226(B)(3), Supplemental earnings benefits provides in pertinent part:
(a)(i) For injury resulting in the employee’s inability to earn wages equal to ninety percent of more of wages at time of injury,' supplemental earnings benefits', payable monthly, equal to sixty-six and two-thirds percent of the differ- •- ence- • between the ^average monthly wages at time of injury and average ■ monthly wages earned or-average monthly wages the employee is able to earn in any month thereafter in any employment dr self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when ihjured and whether or not an, occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his wages by fifty-two and then dividing the product by twelve.
(ii) When the employee is entitled to monthly supplemental earnings benefits pursuant to this Subsection, but is not receiving any income" from employhient or self-employment and the employer Has ndt established earning capacity pursuant to R.S. 23:1226, payments of supplemental earning-benefits shall be made in the manrier provided for in R.S. 23:1201(A)(1).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employ- ■ ment while working in any pain.
(c)(i) Notwithstanding the provisions of • - Subparagraph (b) of this Paragraph, for purposes of Subpara-graph (a) of this Paragraph, if the employee is not' engaged' in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is - able to earn, the amount determined to be the wages the employee is able to earn in any month *803 shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Sub-paragraph (b) of this; Paragraph, which he was physically able to perform, and (1) which he was .offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
(ii). For purposes of, Subparagraph (i) of this Subparagraph,, if the employee establishes by clear |asand convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or othervyise proven to be available to him-,, the employee shall be deemed incapable of performing such employment. ...
(d) The right to supplemental earnings benefits pursuant to this Paragraph shall in- no event exceed a maximum of five hundred twenty weeks, but shall terminate: -
(i) As of the end of any two-year period commencing after termination ■ of temporary total disability, unless during such two-year period: supplemental earnings benefits have been payable during at least thirteen con- ■ secutive weeks; or , ,-
(ii) After receipt of a maximum of five hundred twenty weeks of benefits, provided that for any week during which the employee is paid any compensation under this Paragraph, the ■ employer shall be-entitled to .a-reduction of one full week i of'compensation .against the maximum number of weeks for which compensation is payable under-this Paragraph; however, for any-week during which the employee is paid no supplemental earnings benefits, the employer shall not be entitled to a reduction against the maximum number of weeks payable .under this Paragraph;_ [Italicized emphasis added.]
The defendant’s fourth assignment of error has merit. An award of SEB is based on a claimant’s inability to work. As previously discussed, there is nothing in the record to support a finding that the plaintiffs ability to work was impaired to the degree necessary to qualify‘for SEB as a result of her injury. Rather, all medical reports and notes indicate that she was immediately cleared to return to work with only minimal restrictions that did implicate duties as an assistant office trainee in the defendant’s mail resolving unit. Under these circumstances, the “order’ by the workers’” compensation judge'that the plaintiff “is entitled to supplemental earnings benefits [sic] all time periods she was unable to earn at least 90% of her pre-accident wage” is clear error.’ To the extent that the judgment ^awarded penalties and attorney fees based on the defendant’s failure to pay the plaintiff SEB, it is also clear error. Accordingly, that portion of the judgment pertaining to SEB is reversed.

Assignment of Error 5

The defendant argues' that the ■workers’ compensation judge erred in assessing penalties and attorney fees against the defendant because (1) the. plaintiff failed to submit any valid indemnity and vocational claims to be controverted; (2) the denied surgery was properly controverted; and (3) all medical claims were paid. The plaintiff does not specifically address this assignment of error, asserting only that the trial court did not err in finding -that the defendant failed to reason *804 ably controvert the, plaintiffs entitlement to medical and indemnity benefits.
La.Rev.Stat. 23:1201 “clearly establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control.” Brown v. Tex. La. Cartage, . Inc., 98-1063, p. 9 (La.12/01/98), 721 So.2d 885, 890. The phrase “l'easonably controverted” indicates that the defendant has some “valid reason or evidence upon which to base his denial of benefits.” Id. Thus, to determine whether imposition of penalties and attorney fees are precluded under La.Rev.Stat. 23:1201, this court “must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.” Id. “If an employer or insurer reasonably controverts a claim and then becomes aware of information that makes his contr-oversion of that claim unreasonable, he must then pay the benefits owed.or be lansubject to penalties and attorney fees from that point forward.” Id., 98-1063, p. 10, 721 So.2d at 890-91.
The defendant’s fifth assignment 'of error has merit.
The record is devoid of any evidence supporting the plaintiffs indemnity and •vocational rehabilitation claims and the ■plaintiff does not dispute that all-medical claims have been paid. With regard to the denied arthroscopic surgery, the plaintiff testified at the hearing that her doctor recommended the arthroscopic surgery but her employer refused to pay the related medical expenses because “she had not tried physical therapy” although according to the plaintiff she had gone through two courses of physical therapy for a total of nineteen sessions. ' .
A review of the plaintiffs medical records indicate that she was notified on December 15, 2014 that her initial request for certification1 of arthroscopic surgery was denied based upon the recommendation of a board-certified orthopedist employed by an outside agency, CorVel Corporation, who found (based upon the medical records submitted by the plaintiffs treating orthopedist) that there was limited evidence [in the plaintiffs medical, records] to suggest that physical therapy treatment has been tried'and, therefore, the “medical necessity” for the requested surgery was “not established.” The cover letter attached to the copy of the “Outpatient Non-Certification Recommendation” sent to the plaintiff (but submitted as part of her treating orthopedist’s medical records) includes an advisory that any objection or disagreement with the recommendation should be submitted to the Louisiana Workers’ Compensation Office within fifteen days; There is no indication in the record that the plaintiff disputed the recommendation or requested reconsideration of the recommendation,
| ^Accordingly, although the plaintiff voiced frustration at the hearing as to the initial denial of her request for arthroscopic surgery, it does not appear from the record before us' that the defendant was arbitrary or capricious in denying the initial request for surgery. Rather, the defendant submitted the plaintiffs request for- arthroscopic surgery to- -an outside agency, for a medical review and recommendation and, although the recommendation was not favorable for surgery at that time, the plaintiff did not dispute the medical findings, object to the recommendation, or request reconsideration. Under these circumstances -we cannot say that the de *805 fendant failed to “reasonably controvert”, the plaintiffs requested, medical procedure. Accordingly, to the > extent that workers’ compensation judge awarded attorney fees and imposition of penalties based upon a finding that the defendant failed to reasonably controvert the. plaintiff s request for arthroscopic surgery, it is clear error. That portion of the judgment assessing penalties and attorney .fees against the defendant is reversed.

Assignment of Error 6

Finally, the defendant argues that imposition of penalties for failure to timely pay Ochsner Emergency Room medical expenses and mileage reimburseñSent' requests is error. Again, the plaintiff does not directly address this assignment of error in her appellate brief.
The defendant’s sixth assignment of error has merit. The plaintiff submitted records from Ochsner that indicate she was treated there on November 7, 2012 (with complaints of leg pain and sore ankles which she ascribed to “a fall in April 2012 requiring her to be out of work for 5 months”) and on July 30, 2013, during her employment with the defendant. The record of July 30, 2013, indicates that she complained of bilateral knee pain related to a fall the previous week. Upon [^examination, there was no swelling or tenderness of the knees and, after “IM steroids” were administered, the plaintiff was given a “prescription for TJltram” and discharged. Although the plaintiffs medical records include a “detailed bill” for the medical services received at Ochsner on July 30, 2014, we find nothing to indicate when the bill was paid, and the plaintiffs appellate brief does not supply us with this information or direct us as to where it can be found in the record. Thus, without a payment date, the timeliness of -the payment cannot be determined.
With regard to the ■plaintiffs mileage reimbursements, the plaintiff could not recall when she requested mileage reimbursements from her employer or when the requested amount was paid. Ms. Pais-ant testified that all mileage reimbursement requests had been paid,' although duplicate requests were not paid.
The plaintiff • submitted into evidence documents related to'mileage “reimbursement. First, there are several documents with the heading “Patient Sign In Sheet;” listing dates and what is apparently the plaintiffs signature along with various notations and calculations. The plaintiff also submitted into évidence a letter from her attorney dated September- 19, 2014, requesting mileage reimbursement and a-letter dated January. 6, 2014, requesting reimbursement of the mileage reimbursement initially requested in September-2013.- Finally, the plaintiff submits two official “Request for Reimbursement of Medically-Related Travel Expenses” (under a “Louisiana Workers’ Compensation” heading) indicating reinabursement requests for the two periods (July 26, 2013 to April 19, 2014 for a total of 27.12 miles and April 8, 2014 to May 22, 2014 for a total of 40.86 miles) and that the requests were submitted and paid ($28.15 and $43.30, respectively) oh May 28, 2014.
laaThus, although it appears that plaintiff was not reimbursed for mileage accrued as early as July 27, 2013, until May 28, 2014, the record evidence indicates that the reimbursement request was not properly submitted until May 28, 2014, at which time it was promptly reviewed and paid.
Accordingly, we find that the workers’ compensation judge committed clear error in imposing penalties and awarding attorney fees for the defendant’s purported refusal to “pay the claimant’s emergency room expenses and mileage in a timely *806 manner.” Accordingly, that portion of the judgment is reversed.

Conclusion

With regard to the finding that the plaintiff had a compensable work-related accident, on July 26, 2013, and that, accordingly, the defendant shall pay for all medical expenses, medically related travel expenses and medication expenses related' to the plaintiffs work-related -injury, -.the judgment is affirmed; the remaining portions, of the .judgment are reversed for the reasons-’discussed. Such does not mean that if the plaintiff can establish that she is in the-future entitled-to TTD or SEB (and possibly vocational rehabilitation) that is directly related to her injury in the course and scope of her employment with the defendant that she- may not recover those benefits; we -find only that the record does not support the plaintiffs right -to recover those benefits at the time issue joined.
AFFIRMED IN PART; REVERSED IN PART.

. At the beginning of the hearing, the defendant conceded that the plaintiff was injured during the course and scope of her employment.

. Counsel for the defendant stipulated that she was not terminated because of any positive drug test.

. Ms. Vassal identified the document as “a letter sent to the supervisor requesting that she would like to extend her probationary period.”

. La. Civ.Code. art. 2747 states: "A man is at liberty to dismiss a hired servant attached to . his person, or family, without assigning any reason for so doing. The servant is also free to depart without assigning dny cause.”

. Additionally, we note that the post-trial memorandum (adopted by the workers’ com *797 pensation judge) concluded that the defendant "failed to prove that her work performance, not her injury, was the cause of her termination." Notably, probationary employees do not accrue leave time and, because .probationary employees can be terminated for any reason, the burden would not be on the defendant to prove that the plaintiff was' fired for cause.

. La.Rev.Stat. 23:1361 provides in pertinent part:
A. No person, firm or corporation shall refuse to employ any applicant for employment because of such applicant having asserted a claim for workers’ compensation benefits under the provisions of this Chapter or -under the law of any state or of the .United States. Nothing in this Section shall require a person to employ an applicant who does not meet the qualifications of the position sought. ■
B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions, of this. Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment. [Emphasis added.]
In this case, a compensatory claim under section 136Í was not asserted.'

. We note that the defense counsel’s presentation of testimony pertaining to a policy of providing a probationary employee with notice of deficient Work’and placing a copy of that notice in the employee's file is problematic in light of the. subsequent absence of any evidence that such notice had been provided to the plaintiff. But such is immaterial to a determination relating to an employee’s entitled to workers' compensation benefits for an on-the-job injury.-