| | | |
|---|---|---|
| **PATRICIA MATTHEWS** | * | **NO. 2022-CA-0164** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **BIG EASY JANITORIAL,** | * | |
| **L.L.C., AND LOUISIANA** | | **FOURTH CIRCUIT** |
| **CONSTRUCTION AND** | * | |
| **INDUSTRY SELF INSURERS** | | **STATE OF LOUISIANA** |
| **FUND** | * * * * * * * | |

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 19-08479, DISTRICT "08"
HONORABLE Catrice Johnson-Reid, The Office of Workers' Compensation
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins,
Judge Tiffany Gautier Chase)


Jean-Marc V. Bonin
BONIN LAW FIRM
4224 Canal Street
New Orleans, LA 70119

Alexandre E. Bonin
BONIN LAW FIRM
4224 Canal Street
New Orleans, LA 70119

R. Christian Bonin
BONIN LAW FIRM
4224 Canal Street
New Orleans, LA 70119


        COUNSEL FOR PLAINTIFF/APPELLEE


Nathan L. Schrantz
Nathan Schrantz LLC
830 Union St
Suite 302
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLANT


**AFFIRMED**
**AUGUST 10, 2022**

*TFL*

*SCJ*

*TGC*

In this Workers' Compensation case, the claimant, Patricia Matthews, alleges that she suffered a work-related accident. Ms. Matthews' employer, Big Easy Janitorial, LLC ("Big Easy"), and its insurance carrier, Louisiana Construction and Industry Self Insurers Fund ("LCI"), refused to initiate benefits for the alleged accident. Ms. Matthews then filed a disputed claim for compensation. Following a trial on the matter, the Workers' Compensation Judge rendered a judgment in Ms. Matthews' favor.

Big Easy and LCI filed this timely appeal, arguing that the trial court erred in finding that a compensable work accident occurred and in awarding Ms. Matthews indemnity benefits. They also argue that the trial court erred in awarding Ms. Matthews medical expenses incurred before February 26, 2019, and in awarding Ms. Matthews penalties and attorney fees.

Upon review, we find that the medical records and testimony provided by Ms. Matthews were sufficient to establish, by a preponderance of the evidence, that she suffered a compensable work accident. We hold that the weight of the medical

1

reports, Ms. Matthews' unsuccessful attempts to work, and her testimony provided a reasonable factual basis for the trial court's finding of temporary total disability. We further hold that the trial court did not err in finding that the severity and unexpectedness of Ms. Matthews' injury constituted an emergency and in holding Big Easy and LCI liable for related emergency medical expenses. We conclude that Big Easy and LCI did not investigate factual and/or medical information to properly controvert Ms. Matthews' claim, and, thus, the trial court did not err in awarding penalties and attorney fees to Ms. Matthews. Consequently, we affirm the judgment of the trial court and award additional attorney fees to Ms. Matthews for the effort undertaken in opposing this appeal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ms. Matthews was employed by Big Easy as a housekeeper in a Homewood Suites hotel in New Orleans. On December 28, 2018, the hotel experienced a flood, causing the elevators to malfunction. Ms. Matthews was working the evening shift and responded to service calls in the twelve-story building for over eight hours. The volume of calls was high due to the impact of the flood and elevator malfunctions upon hotel guests. Without the use of elevators, Ms. Matthews was required to walk up and down the steps carrying heavy loads of laundry and toiletries for guests. At one point, she alleges that her shoulder struck the handrail of the staircase. Ms. Matthews states that she informed the only other staff member present at the time, Karly, that she was experiencing pain in her shoulder and arm due to the collision. Karly was employed by Homewood Suites

itself, not Big Easy. The next day, Ms. Matthews reported to work for her morning shift. Ms. Matthews alleges that, during her morning shift, she advised the head of housekeeping, Danielle, of her injury. Danielle was also an employee of Homewood Suites. Ms. Matthews alleges that she also alerted her supervisor, Patricia Wells, of the injury and that Ms. Wells offered her a shoulder ointment.

Over the next few days, Ms. Matthews states that she sought bed rest to ameliorate her pain. However, she claims that her pain worsened and on January 2, 2019, she reported to the Emergency Department of Ochsner-Baptist Medical Center complaining of shortness of breath, back pain, chest pain, and arm pain. She states that she informed the medical staff that her symptoms began when she collided with the guardrail on December 28, 2018. Ms. Matthews was treated with an anti-inflammatory injection and told she could return to work in three days. She was also advised that if her symptoms did not resolve within three weeks, to seek further emergency care.

A week later, Ms. Matthews returned to the Emergency Department with complaints of chest pain and pain radiating into her back with any movement. She was diagnosed with non-cardiac chest pain and given a note instructing that she could return to work in two days, on January 10, 2019. However, she was informed that if her pain continued, she should seek emergency care again.

A Big Easy supervisor, Leticia Arzou, was provided with the hospital note dated January 8, 2019. Ms. Arzou testified that Ms. Matthews gave the hospital note to Big Easy, but that Ms. Matthews never directly told Ms. Arzou of her

injury.  Ms. Arzou was aware of the flood conditions requiring Ms. Matthews to undertake manual deliveries via the stairs.  On January 10, 2019, Big Easy terminated Ms. Matthews' employment.  On January 15, 2019, she appeared at Big Easy's offices in pursuit of a letter confirming her termination.  Ms. Matthews states that she verbally informed Big Easy personnel of the accident at that time.  Big Easy alleges that on that same day, Ms. Matthews filled out an application to reapply for work with the company.  Ms. Matthews denies this allegation.

After her termination, Ms. Matthews states that, despite her pain, she sought employment in order to retain public benefits she relied upon for her family.  On January 30, 2019, approximately one month after the accident, Ms. Matthews returned to Ochsner-Baptist reporting symptoms of shortness of breath, chest pain, neck pain, back pain, and tingling sensations.  She had difficulty walking and had been experiencing numbness in her lower body for one week.  An MRI was ordered and exposed a disc herniation and severe spinal cord compression.  She was transferred to another Ochsner campus at once for a consultation.  Two days later, an emergency surgery was performed on Ms. Matthews to prevent further loss of mobility.  She was referred to physical therapy, but reported that despite undergoing multiple physical therapy treatments and continuing physical therapy exercises at home, she was unable to care for herself, for her children, or return to work.

Approximately three weeks after her surgery, on February 26, 2019, Ms. Matthews' counsel sent a Letter of Amicable Demand and Notice of

4

Representation to Big Easy to formally advise them of her injury at work and inform them of the medical care she had received. Big Easy and LCI denied that Ms. Matthews had suffered a work-related accident and declined to initiate benefits. A trial was held on the demand with a Workers' Compensation Judge. The court concluded that Ms. Matthews had suffered a work-related accident and held Big Easy and LCI liable for her medical treatments, as well as penalties and attorney fees. Big Easy and LCI now appeal this judgment.

## DISCUSSION

### *Standard of Review*

In workers' compensation cases, appellate courts apply the manifest error, or clearly wrong, standard of review to factual findings by the Office of Workers' Compensation. *Dean v. Southmark Construction*, 03-1051, p. 7 (La. 7/6/04), 879 So. 2d 112, 117. To reverse a trial court's factual findings under the manifest error standard, an appellate court must find that "a reasonable factual basis does not exist for the finding of the trial court" and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. and Dev.*, 617 So. 2d 880, 882 (La. 1993) (citing *Mart v. Hill*, 505 So. 2d 1120, 1127 (La. 1987)). An appellate court must evaluate "whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So. 2d at 882 (internal citations omitted). "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict

5

exists in the testimony." *Id.* (citing *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989); *Arceneaux v. Domingue*, 365 So. 2d 1330, 1333 (La. 1978)). This standard of review acknowledges that the trial courts are more appropriately equipped to weigh the credibility of live witnesses and upholds the unique functions of the trial and appellate courts. *Stobart*, 617 So. 2d at 883 (citing *Canter v. Koehring Co.*, 283 So. 2d 716, 724 (La. 1973)).

Legal errors in a workers' compensation proceeding are reviewed *de novo*. *MacFarlane v. Schneider Nat'l Bulk Carriers, Inc.*, 07-1386, p. 3 (La. App. 4 Cir. 4/30/08), 984 So. 2d 185,188 (citing *Brantley v. Delta Ridge Implement, Inc.*, 41,190, p. 8 (La. App. 2 Cir. 6/28/06), 935 So. 2d 308, 314). Questions of statutory interpretation are also subject to *de novo* review by appellate courts. *Id.* (internal citations omitted).

"The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact." *Dean*, 03-1051, p. 7, 879 So. 2d at 117 (citing *Winkler v. Wadleigh Offshore, Inc.*, 01-1833, p. 3 (La. App. 4 Cir. 4/24/02), 817 So. 2d 313, 316 (internal citation omitted)). A mixed question of law and fact is subject to the manifestly erroneous standard of review. *Wootan & Saunders v. Diaz*, 17-0820, p. 5 (La. App. 4 Cir. 3/28/18), 317 So. 3d 390, 395 (citing *Chimneywood Homeowners Ass'n, Inc. v. Eagan Ins. Agency, Inc.*, 10-0368, p. 5 (La. App. 4 Cir. 2/2/11), 57 So. 3d 1142, 1146).

***Assignment of Error #1***

In their first assignment of error, the appellants allege that the trial court erred as a matter of law by finding the appellee suffered a work "accident" as the term is defined in La. R.S. 23:1021.

Louisiana defines an accident, for the purposes of workers' compensation, as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1). The initial burden of proof is upon the claimant to establish, by a preponderance of the evidence, that an accident occurred on the job and that the claimant sustained an injury. *Holiday v. Borden Chem.*, 508 So. 2d 1381, 1383 (La. 1987) (citing *Lucas v. Ins. Co. of North America*, 342 So. 2d 591, 595 (La.1977)). The claimant must then establish, by a preponderance of the evidence, a causal connection between the accident and their resulting disability. *West v. Bayou Vista Manor, Inc.*, 371 So. 2d 1146, 1147 (La. 1979).

The appellants state that La. R.S. 23:1021(1) specifically "excludes from the definition of 'accident' conditions that are caused by a progressive deterioration." The appellants point to medical records identifying the appellee's pre-existing neck and back problems, as a result of a degenerative cervical osteophyte complex, and assert that her injury is not a covered accident under Louisiana law. The appellants also identify a medical record from January 2, 2019, in which the appellee is noted to "den[y] any recent trauma/injury."

7

However, Louisiana law accepts that an accident has occurred even "when 'heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition.'" *Bruno v. Harbert Int'l Inc.*, 593 So. 2d 357 (La. 1992) (quoting *Cutno v. Neeb Kearney & Co.*, 237 La. 828, 838, 112 So. 2d 628, 631 (1959); citing *Nelson v. Roadway Express, Inc.*, 588 So. 2d 350, 353-54 (La. 1991)). If a claimant is able to prove that the accident "aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed," the claimant may still prevail. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So. 2d 320, 324 (La. 1985) (internal citations omitted). "Moreover, Louisiana courts view the question of whether there was an accident from the worker's perspective." *Bruno*, 593 So. 2d at 360 (citing *Williams v. Reg'l Transit Auth.*, 546 So. 2d 150, 156 (La. 1989).

Claimants may rely on their own testimony that an unwitnessed accident occurred in the course and scope of employment if the claimant can meet these two elements: "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bruno*, 593 So. 2d at 361 (internal citations omitted). Trial courts "should accept as true a witness's un-contradicted testimony, although the witness is a party, absent 'circumstances casting suspicion on the reliability of this testimony.'" *Bruno*, 593 So. 2d at 361 (citing *West*, 371 So. 2d at 1147; *Holiday*, 508 So. 2d at 1383).

In the instant matter, the appellee was alone at the time of the alleged accident. She testified regarding the circumstances surrounding the alleged injury and testified that she informed the hotel employee working that evening of the accident. She also testified that she told the hotel supervisors of the accident. The appellants argue that this is the only evidence to corroborate her claim. This is inaccurate. The record also contains medical reports corroborating her version of events, wherein notations from medical providers indicate that she informed them of the onset of symptoms around the time of the alleged accident. Although the appellants urge that the trial court committed legal error in finding that a compensable accident occurred, this Court can find no indication of a legal error in the trial court's analysis. Giving proper deference to the fact-finder, who observed the testimony of the appellee and the appellants' witness, we find that the trial court was reasonable in concluding that the appellee suffered a work "accident," as the term is defined by the Louisiana workers' compensation statute. Therefore, the trial court did not err in holding that the appellee suffered a work "accident."

***Assignment of Error #2***

The appellees' second assignment of error contends that the trial court erred as a matter of law by awarding the appellee indemnity benefits, despite a physician stating she is only restricted to light duty work.

The trial court found that the appellee was rendered temporarily totally disabled from January 12, 2019 through October 11, 2019, and from January 23, 2020 to the present day. The trial court held that she was owed temporary total

9

disability for these time frames. Temporary total disability is paid to workers injured in the course and scope of their employment "only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment." La. R.S. 23:1221(1)(c). This standard requires the claimant to "prove the existence of a contested fact is highly probable, or much more probable than its non-existence." *Iberia Med. Ctr. v. Ward*, 09-2705, p. 16 (La. 11/30/10), 53 So. 3d 421, 432 (citing *Talbot v. Talbot*, 03-0814, pp. 9-10 (La. 12/12/03), 864 So. 2d 590, 598).

Additionally, to substantiate a claim for total temporary disability benefits, the claimant "must introduce objective medical evidence." *Marti v. City of New Orleans*, 12-1514, p. 30 (La. App. 4 Cir. 4/10/13), 115 So. 3d 541, 560 (citing *Bilquist v. Custom Craft Homes, Inc.*, 12-0469, p. 14 (La. App. 4 Cir. 11/7/12), 105 So. 3d 194, 203). The judge reviewing the claim "must weigh both medical and lay evidence." *Marti*, 12-1514, pp. 30-31, 115 So. 3d at 560 (citing *Bilquist*, 12-0469, p. 14, 105 So. 3d at 203). "[C]ompensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment." La. R.S. 23:1221(1)(b).

To substantiate her claim for total temporary disability benefits, the appellee introduced medical records documenting her attempts to seek care for her alleged injury. These records include three visits to emergency departments, one

10

emergency surgery approximately a month after the alleged injury, physical therapy, a post-operative report, and a final report a year after the injury. The medical records contain similar descriptions of her injury and document the progression of her symptoms.

The first medical provider visited by the appellee furnished her a letter excusing her from work for three days, but advising that if her symptoms did not resolve within three weeks, to return to the emergency department. A week later, complaining of acute pain and difficulty walking, the appellee returned to the emergency department and was excused from work for two days, but advised that if her pain remained, she should again seek emergency care. During this visit, the appellee informed medical personnel that her symptoms began roughly two weeks earlier and that she occasionally was required to walk up and down twelve stories at work.

A month after the accident, the appellee reported to the hospital with pain, shortness of breath, numbness in her lower extremities, and difficulty walking. Emergency surgery was performed and she was placed on no-duty work status until her next appointment. She was also prescribed physical therapy, which she states she attended sporadically due to transportation issues. The appellee informed her physical therapist that she was unable to care for herself or her children, or return to work. She also reported numerous falls at home, but despite her mobility challenges, she claims that she continued to practice her physical therapy exercises at home. In a post-operative evaluation, six weeks after the

accident, the examining physician diagnosed her with gait difficulty, muscle weakness of lower extremity, neck pain, and impairment of balance. The doctor recommended that she use a rolling walker to improve safety with ambulation, due to her frequent falls, and did not comment on her work status. The appellee's final medical report observes that "[b]ased on the patient's account, subjective findings, and my objective findings, the injuries diagnosed and treated herein are directly and causally attributed to the accident which occurred on 12/28/2018." This report noted her work status as "light duty/sedentary."

The appellee also introduced lay evidence, in the form of her own testimony, regarding the evolution of her condition and difficulty managing her own care, as well as the care of her children. She stated that she attempted to find alternate work after being terminated by the appellants in order to retain public benefits. She was employed at a thrift store from October 11, 2019 to January 23, 2020. She was forced to resign when her duties changed and she was unable to physically perform the new tasks assigned. She was also employed at a hotel as a housekeeper for a few days, but was unable to continue working there due to the physical demands of the job. During trial, the appellee testified that she has been unable to retain employment because of her physical impairments. She described how she is able to walk, but unable to sustain movement for long and is forced to rest after brief movements.

The appellants argue that the evidence introduced by the appellee is not objective evidence of a disability, and therefore is insufficient to support a finding

of disability. They submit that the appellee failed to satisfy her burden of proving a disability by clear and convincing evidence and that the trial court committed legal error in finding a disability. An examination of the evidence introduced by the appellee belies this argument. The appellee introduced numerous medical reports that corroborate the timing, nature, and extent of her injury. She sought emergency medical care on three occasions with escalating symptoms of distress. She underwent emergency surgery, as well as physical therapy, in order to mitigate her condition. She attempted to work, not only in her original occupation, but also in another field, and was incapable of performing the work required. The weight of this evidence cannot merely be considered self-serving testimony regarding the appellee's ability to work. Thus, a reasonable factual basis exists for the trial court's finding of temporary total disability and the trial court did not err in awarding temporary total disability.

### Assignment of Error #3

The appellants' third assignment of error asserts that the trial court erred as matter of law by awarding the appellee medical expenses incurred prior to the appellee's February 26, 2019 demand letter.

La. R.S. 23:1142(B) Nonemergency care provides:

(1)(a) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless

13

the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

The appellants argue that, should this Court affirm the trial court's judgment finding a compensable accident, this statutory language excuses them from paying over seven hundred and fifty dollars for any medical expenses incurred prior to the appellee's first official demand for payment. The appellants also argue that evidence was introduced that these expenses should have been paid, and were paid, by Medicaid.

The appellee counters that although treatments were, in fact, paid by Medicaid, Medicaid has a right to reimbursement pursuant to La. R.S. 23:1212(B). This statute provides that "[p]ayments by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state against the employer or insurer." La. R.S. 23:1212(B). The claims referred to are claims "against the employer or insurer." La. R.S. 23:1212(A). The appellee identified a lien letter received from an agent of Medicaid seeking reimbursement.

The appellee also clarifies that although the seven-hundred and fifty dollar cap applies to non-emergency care without prior consent of the payor, an exception exists for emergency care. In furtherance of her argument, the appellee cites to:

> Emergency care. (1) In no event shall prior consent be required for any emergency procedure or treatment deemed immediately necessary by the treating health care provider. Any health care provider who authorizes or orders emergency diagnostic testing or treatment, when said diagnostic testing or treatment is held not to have been of an emergency nature, shall be responsible for all of the charges incurred in such diagnostic testing or treatment. Said health care provider shall bear the burden of proving the emergency nature of the diagnostic testing or treatment.

14

La. R.S. 23:1142(C)(1).

The appellee maintains that all care she received prior to the demand letter was emergency in nature. The statute itself does not define "emergency care," but the Louisiana Supreme Court has addressed this issue in *Snearl v. Kelly's Indus. Services, Inc.*, 06-0218 (La. 3/17/06), 924 So. 2d 138.

In *Snearl*, the claimant was injured in the course and scope of his employment when a tractor fell on him and crushed his ankle. *Snearl*, 06-0218, p. 1, 924 So. 2d at 139. The claimant was quickly transported to a hospital emergency room and surgery was performed on him the next day by an orthopedist on duty. *Id.* A second surgery was needed after the first surgery was unsuccessful. *Id.* The claimant continued to see the orthopedist for eight months after the surgeries. *Id.* At the end of the eight months, the orthopedist recommended he return to work with a full work release, without any restrictions. *Id.* The claimant complained of continued pain and demanded to see a doctor of his own choosing. *Id.* His employer refused to authorize the new evaluation, arguing that the claimant had already selected the surgical orthopedist by continuing treatment with that doctor for eight months following the surgeries. *Id.* The claimant then filed a disputed claim for compensation to select a new orthopedist. *Id.* The hearing officer ordered that the claimant was authorized to select a new doctor, explaining that the first orthopedist was treating the claimant on an emergency basis. *Id.*, 06-0218, pp. 1-2, 924 So. 2d at 139.

15

On review, the Supreme Court relied on the Webster's College Dictionary definition of "emergency" as "a sudden, urgent, usu. unexpected occurrence requiring immediate action." *Id.*, 06-0218, p. 2, 924 So. 2d at 140. The Court found that the initial treatment and surgeries constituted emergency treatment, the subsequent eight months did not. *Id.*, 06-0218, pp. 2-3, 924 So. 2d at 140. The Court reversed the hearing officer's ruling, remarking that while there is no exact timeframe for the duration of "emergency treatment," eight months was too long. *Id.*

In the case *sub judice*, the claimant's disputed medical care was provided within two months of the accident. Initially, the appellee continued to work and stated that she hoped her symptoms would dissipate with rest. However, after four days, her symptoms had dramatically worsened and she reported to the emergency room. Her next two medical treatments were also unplanned visits to the emergency room, based on the appellee's descriptions of acute pain and numb sensations. During her first two visits, medical personnel advised her to return to the emergency department if her symptoms did not resolve. Upon her third time in the emergency department, she was immediately referred to a surgeon and underwent surgery two days after reporting to the hospital. The fact that she was referred to return to the emergency department by medical personnel reinforces the appellee's argument that her condition merited urgent and immediate care. The rapidity with which surgery was administered further bolsters the categorization of this treatment as emergency care.

16

Given the unexpected severity of the appellee's injury and symptoms, the threatened loss of mobility, and the swift administration of surgery, a reasonable factual basis exists for the trial court's judgment ordering reimbursement, without limit, to Medicaid for all medical costs incurred, including those prior to the issuance of the demand letter. Thus, the trial court did not err in ordering the appellants to reimburse Medicaid for all medical services related to her injury.

***Assignment of Error #4***

In their fourth assignment of error, the appellants argue that the trial court erred as a matter of law by awarding the appellee penalties and attorney fees.

The trial court ordered numerous penalties and attorney's fees to be assessed against the appellants. First, the court ordered penalties to be assessed against the appellants in the amount of $2,000.00, pursuant to Louisiana Revised Statute §23:1201(F), for failure to timely pay indemnity benefits. The trial court found that the appellants failed to reasonably controvert the appellee's claim and/or establish that there were conditions over which it had no control when they failed to pay this claim. Accordingly, the trial court assessed penalties of $2,000.00 against the appellants, pursuant to Louisiana Revised Statute §23:1201 (F), for failure to pay medical benefits timely.

The trial court also assessed penalties against the appellants for their failure to reasonably controvert this claim and/or establish that there were conditions over which it had no control when they failed to timely authorize necessary medical treatment, in the amount of $2,000.00, pursuant to Louisiana Revised Statute

17

§23:1201 (F). Lastly, the trial court assessed penalties of $2,000.00 against the appellants for their failure to reasonably controvert this claim and/or establish that there were conditions over which it had no control when they failed to timely and properly investigate the accident, pursuant to Louisiana Revised Statute §23:1201(F). For each of these violations of La. R.S. §23:1201(F), the trial court assessed attorney's fees of $2,000.00. The total sum of penalties and attorney's fees assessed against the appellants is $16,000.00.

La. R.S. §23:1201(F) authorizes the imposition of penalties and attorney's fees against an employer or insurer who fails to pay workers' compensation benefits. However, if employers and insurers have reasonably controverted the claim or if such nonpayment results from conditions over which the employer or insurer had no control, penalties and attorney fees will not be assessed against the employer or insurer. La. R.S. §23:1201(F)(2).

"The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers' compensation action is essentially a question of fact" and subject to manifest error/clearly wrong standard of review. *Authement v. Shappert Eng'g*, 02-1631, p. 12 (La. 2/25/03), 840 So. 2d 1181, 1188-89 (citing *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So. 2d 551, 556). Courts must evaluate "whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the

18

benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So. 2d 885, 890. Employers must have "some valid reason or evidence upon which to base his denial of benefits." *Id.* Stated another way, employers must possess an "articulable and objective reason to deny benefits at the time it took action." *Authement*, 02-1631, p. 11, 840 So. 2d at 1188 (citing *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So. 2d 41, 46).

In *Johnson v. Sewerage & Water Bd. New Orleans*, the claimant was injured during the course and scope of her provisional employment. *Johnson v. Sewerage & Water Bd. New Orleans*, 15-0950, p. 1 (La. App. 4 Cir. 3/30/16), 190 So. 3d 785, 788. The employee submitted a claim for arthroscopic surgery and her employer submitted her request to an outside agency for evaluation. *Id.*, 15-0950, p. 30, 190 So. 3d at 804. A board-certified orthopedist at the outside agency reviewed materials provided by the claimant's treating orthopedist and did not recommend surgery, finding "that there was limited evidence [in the plaintiff's medical records] to suggest that physical therapy treatment has been tried and, therefore, the 'medical necessity' for the requested surgery was 'not established.'" *Id.* The claimant received written notice of this finding, including language advising her that she should submit any objection or disagreement with the recommendation to the Workers' Compensation Office within fifteen days. *Id.* The record contained no indication that the claimant ever disputed or objected to the recommendation. *Id.* This Court found that by fully examining the medical records of the claimant, submitting them for objective review, and providing a

claimant with the opportunity to dispute the results of its review, the employer had reasonably controverted the worker's claim for surgery. *Id.*, 15-0950, p. 31, 190 So. 3d at 804-05. The Court overturned an award of penalties and attorney fees. *Id.*, 15-0950, p. 31, 190 So. 3d at 805.

In the case at bar, the appellants do not claim that nonpayment occurred due to circumstances beyond their control. Instead, the appellants contend that they have reasonably controverted the appellee's claim. They argue that the appellee's failure to inform them of the accident and the medical provider note releasing her to return to work on January 10, 2019, provided a sufficient basis to initially deny the appellee's claim. However, the appellee states that she did inform the appellants of the accident on January 15, 2020. The appellants do not claim to have any other reason to deny benefits at that time.

After the February 26, 2019 demand letter was sent, the appellants allege that they undertook an investigation of the accident. The appellants produced two emails from an employee stating that an investigation was undertaken and there was no evidence of a work accident or injury. The investigating employee claims she asked other employees about an accident and was informed that the appellee had suffered a stroke. The only evidence of that investigation is one sentence with the conclusory statement that an investigation occurred and no evidence of injury was found. The nature and details of the investigation are unclear. The appellants did not provide any information on the witnesses that were contacted for the investigation. The appellants have not stated whether they questioned the specific

20

hotel employees that the appellee declared she informed of the accident. It does not appear from the record that the appellee herself was contacted throughout the investigation. During trial, the appellants did not furnish any further details on the investigation. There is reference to this being a second investigation, but the details, timing, and contents of a first investigation are, likewise, not provided.

The appellants also argue that nonpayment was warranted because the appellee's medical records indicate a gradual deteriorative condition and not an accident. However, it has been established that claimants may be compensated even in the case of an existing infirmity, if that infirmity is "aggravated, accelerated, or combined with" to cause disability. *Walton*, 475 So. 2d 320, 324 (La. 1985). Furthermore, the appellee's medical records are inconsistent with the results of the appellants' alleged investigatory finding of a stroke. Despite this obvious contradiction, the appellants have not provided evidence of any other investigatory action taken.

Overall, the appellants have provided scant, if any, information regarding their investigation or investigations. Unlike in *Johnson*, where outside expert medical review was engaged, the appellants appear to rely on their lay interpretation of the appellee's medical record and an erroneous interpretation of the law regarding existing conditions. Moreover, the appellee provided voluminous medical reports documenting the progression of her injury and in-person testimony regarding the circumstances of the accident. In consideration of the appellants' lack of factual and/or medical information to counter the appellee's

testimony and medical records and the corresponding lack of a valid reason upon which to base the denial of benefits, we find that the appellants did not reasonably controvert the appellee's claim. Therefore, the trial court did not commit manifest error in awarding penalties and attorney fees.

***Appellate Attorney Fees***

The appellee has filed an answer to this appeal seeking attorney fees and costs in connection with the appeal. "When the defendant in a worker's compensation case appeals and obtains no relief, and when the appeal has necessitated additional work on the part of plaintiff's counsel, the appellate court usually awards an increase in attorney fees, provided that the plaintiff has requested the increase in accordance with proper appellate procedure." *Tillmon v. Thrasher Waterproofing*, 00-0395, p. 8 (La. App. 4 Cir. 3/28/01), 786 So. 2d 131, 137 (citing *Miller v. City of New Orleans*, 95-1005, p. 13 (La. App. 4 Cir. 12/14/95), 665 So. 2d 1293, 1300); *Sam v. Jhane Home Health Care Services, Inc.*, 95-0081, p. 3 (La. App. 4 Cir. 6/7/95), 657 So. 2d 559, 561; *See Smith v. Kelly Labor Serv.*, 239 So. 2d 685, 691; *See Skinner v. Baggett Transp. Co.*, 391 So. 2d 555, 559-60 (quoting *Conlay v. Houston General Ins. Co.*, 370 So. 2d 196, 201 (La. App. 3d Cir. 1979)).

We have determined that the appellants, the workers' compensation defendants, are not owed any relief. The appeal has necessitated additional work by the appellee's counsel and counsel requested the increase in keeping with proper appellate procedure, through an answer to the appeal. We hold that the

appellants are condemned to pay additional reasonable attorney fees in the amount of $2,000 for opposing this appeal.

## CONCLUSION

In conclusion, we affirm the judgment of the trial court in finding that the appellee suffered a work "accident," awarding indemnity benefits, holding the appellants liable for medical expenses incurred prior to the February 26, 2019 demand letter, and awarding penalties and attorney fees. We award additional attorney fees to the appellee for the opposition of this appeal.

**AFFIRMED**